SIERRA CLUB et al., Plaintiffs,

v.

Earl L. BUTZ et al., Defendants.

HUMBOLDT FIR, INC., Counter-claimant,

v.

SIERRA CLUB, Counterdefendant.

No. C–72 1115 AJZ.

United States District Court,
N. D. California.

Oct. 17, 1972.

John D. Hoffman, Sierra Club Legal
John D. Hoffman, Barry A. Fisher, Sierra Club Legal Defense Fund, Inc., counterdefendant.

Pillsbury, Madison & Sutro, George A. Sears, Robert M. Westberg, Roland W. Selman, San Francisco, Cal., for defendant and counterclaimant Humboldt Fir, Inc.

James L. Browning, Jr., U. S. Atty., Francis B. Boone, Asst. U. S. Atty., San Francisco, Cal., Arthur D. Smith, Dept. of Justice, Washington, D. C., for federal defendants.

## ORDER DISMISSING COUNTER-CLAIM AND CROSS-COMPLAINT OF HUMBOLDT FIR, INC.

ZIRPOLI, District Judge.

The Sierra Club and four individuals, Lucille Vinyard, David Van De Mark, Delphine Fountain, and Everett Fountain, filed suit in this court seeking injunctive and declaratory relief against, among others, Humboldt Fir, Inc., that would have the effect of temporarily prohibiting logging in an area near the Salmon-Trinity Alps Primitive Area. This action was taken by plaintiffs to prevent any dispoliation which would disqualify the forest from consideration as a part of the National Wilderness Preservation System pending review by the Secretary of Agriculture of a request that the forest be recommended as one that Congress should designate a Wilderness Area. Plaintiffs argued that pending review by the Secretary and ultimate decision by Congress and the President, it is the duty of the Forest Service to protect the wilderness quality of the area. *See* Parker v. United States, 309 F.Supp. 593 (D.Colo.), aff'd, 448 F.2d 793 (10th Cir. 1971), cert. denied, 405 U.S. 989, 92 S.Ct. 1252, 31 L.Ed.2d 455 (1972).

Three days after plaintiffs filed this case, defendant Humboldt Fir, Inc., filed a pleading denominated a "cross-complaint" seeking injunctive and monetary relief against the Sierra Club. Recognizing the possible technical deficiency of that pleading, on the next day Humboldt Fir filed a counterclaim that incorporated the earlier "cross-complaint" and expanded its scope so as to seek relief against the four individual plaintiffs as well as the Sierra Club. Plaintiffs have moved that the counterclaim be dismissed for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b).

The counterclaim contains two counts, both based on state law tort liability for interference with advantageous relationship. The first alleges that the plaintiffs have "intentionally, willfully, and

wrongfully, by oral and written representations, by asserting administrative appeals, by filing the complaint herein and other complaints, and by other acts" sought to induce the United States to breach a contract that allows Humboldt Fir to harvest timber near the Salmon-Trinity Alps Primitive Area. The second count alleges: that Humboldt Fir is dependent for its continued existence upon future timber sales by the United States in that area; that but for plaintiffs' acts such future sales would have been made; and, finally, that plaintiffs "intentionally, willfully, and wrongfully, by oral and written representations, by asserting administrative appeals, by filing the complaint herein and other complaints, and by other acts" induced the Forest Service to reduce or abandon its announced timber sale program. Humboldt's prayer requests pendant and permanent injunctive relief, compensatory damages, and $1,000,000 punitive damages.

The standard to be applied in judging whether a complaint should be dismissed for failure to state a claim is a strict one:

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see* 2A Moore's Federal Practice 2273–74 (1968). Plaintiffs nevertheless argue that the counterclaim should be dismissed; they rely upon the rule that if a complaint states facts that constitute a valid defense to the action and this defense is not avoided by pleading further facts, then the complaint should be dismissed. *See* Leggett v. Montgomery Ward & Co., 178 F.2d 436 (10th Cir. 1949); 2A Moore's Federal Practice 1713 n. 40 (1968).

The defense plaintiffs argue the counterclaim reveals is that all their actions were for the purpose of petitioning the government for redress of grievances. The proper disposition of their motion rests entirely upon the validity of this defense.

### I.

The basis of the defense is, of course, the First Amendment provision guaranteeing the right of the people to petition the government for a redress of grievances. As the Supreme Court noted in Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 89 L.Ed. 430 (1945), this is a basic freedom in a participatory government, closely related to freedom of speech and press; together these are the "indispensable democratic freedoms" that cannot be abridged if a government is to continue to reflect the desires of the people. Thus, this court cannot be too careful in assuring that its acts do not infringe this right.

The Supreme Court has never had occasion to decide what effect the right to petition the government has upon common law tort actions that might be brought against those who damage the interest of others in the exercise of this right. This court believes, however, that the Supreme Court has outlined the applicable principles of law in its cases dealing with the relationship between the First Amendment and defamation, and in its cases interpreting the Sherman Act as inapplicable to those who conspire to bring about governmental action.

### A.

In a series of decisions beginning with New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court has determined that to a large extent the First Amendment guarantees of free speech and press constitute a constitutional defense to the common law torts of defamation, *see* Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); Time, Inc. v. Pape, 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971); Monitor Patriot Co. v. Roy, 401

U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971); Ocala Star-Banner Co. v. Damron, 401 U.S. 295, 91 S.Ct. 628, 28 L.Ed. 2d 57 (1971); Greenbelt Co-op. Publishing Ass'n v. Bresler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970); St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); Beckley Newspapers Corp. v. Hanks, 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967); Associated Press v. Walker, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), and invasion of privacy, *see* Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967).

These civil actions, the Court concluded, must be limited to the same extent that a state would be limited in imposing criminal sanctions, because "fear of damage awards . . . may be markedly more inhibiting than the fear of prosecution under a criminal statute." New York Times Co., 376 U.S. at 277, 84 S.Ct. at 724. Therefore, in regard to both invasion of privacy and defamation the Court held that if a speech or writing is a genuine attempt to communicate with others concerning matters of "public or general interest," then the Constitution forbids that courts impose sanctions—even civil liability—upon those exercising First Amendment rights. Liability can be imposed only when what appears to be an attempt to discuss matters of public interest is a "sham" in that the speaker knows his statements are false or speaks with reckless disregard of whether they are true or false. Importantly, the Court recently made it absolutely clear that absent this "sham" use common law "malice" is irrelevant to a person's right to speak freely without fear of liability. Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 52 n. 18, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).

The reasoning consistently followed in these cases has been that the standard set is necessary in order to prevent infringement upon the rights of free speech and press: "erroneous statement is inevitable in free debate, and . . . it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need . . . to survive.'" New York Times Co., 376 U.S. at 271–272, 84 S.Ct at 721. Under a less strict rule, the Court feels:

would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expenses of having to do so. They tend to make only statements which "steer far wider of the unlawful zone." . . . The rule thus dampens the vigor and limits the variety of public debate. It is inconsistent with the First and Fourteenth Amendments.

*Id.* at 279, 84 S.Ct. at 725.

**B.**

Although the Supreme Court has never directly considered the applicability of the *New York Times* standard to civil suits seeking damages caused by exercise of the right to petition, in a series of cases interpreting the Sherman Act the Court indirectly dealt with the problem.

The leading case is Eastern R.R. Presidents' Conference v. Noerr Motor Freight Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), where the Court interpreted the Sherman Act to be inapplicable to a conspiracy of railroads formed to foster the passage and enforcement of laws destructive of the trucking business. The Court held that it was irrelevant what the railroads' motives were or what tactics they used so long as the campaign was in fact directed toward influencing governmental action and was not a "sham" to cover activities actually aimed directly at destroying competition.

In discussing its reasons for reaching this interpretation of the Sherman Act, the Court noted the constitutional issue that would be involved were the Act interpreted to outlaw attempts to influence legislation:

In the first place, such a holding would substantially impair the power

of government to take actions through its legislature and executive that operate to restrain trade. In a representative democracy such as this, these branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives . . . . Secondly, and of at least equal significance, such a construction of the Sherman Act would raise important constitutional questions. The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms.

*Id.* at 137–138, 81 S.Ct. at 529. The Court went on to note that the freedom to petition the government cannot reasonably be allowed to disappear whenever the petitioner acts with "malice." It is for the purpose of personal gain or injury to those with opposing interests that most citizens will exercise their right to petition the government. Therefore, "[t]he right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so." *Id.* at 139, 81 S.Ct. at 530.

In the recent case California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), the Court explained that "[t]he same philosophy governs the approach of citizens or groups of them to administrative agencies . . . and to courts, the third branch of Government."

### C.

Apart from these and similar Supreme Court cases, there appear to be no reported cases dealing with the relationship between civil liability and the right

of petition except Arlington ·Heights Nat'l Bank v. Arlington Heights Fed. Sav. and Loan Assn., 37 Ill.2d 546, 229 N.E.2d 514 (1967). There the Illinois Supreme Court held defendant was "conditionally privileged" when it induced a city to pass certain ordinances in breach of a contract the city had with the plaintiff, and therefore the plaintiff could prevail in its action for inducing breach of contract only by showing "actual malice."

■■ This court agrees that when a suit based on interference with advantageous relationship is brought against a party whose "interference" consisted of petitioning a governmental body to alter its previous policy a privilege is created by the guarantee of the First Amendment. This court, however, does not believe that privilege should depend upon malice. For the reasons given by the Supreme Court in *Eastern R.R. Presidents' Conference, supra,* this court is persuaded that all persons, regardless of motive, are guaranteed by the First Amendment the right to seek to influence the government or its officials to adopt a new policy, and they cannot be required to compensate another for loss occasioned by a change in policy should they be successful.

■ Moreover, this court believes that the malice standard invites intimidation of all who seek redress from the government; malice is easy to allege under modern pleading rules such as those of the federal courts[1] and therefore in most cases even those who acted without malice would be put to the burden and expense of defending a lawsuit. Thus, the malice standard does not supply the "breathing space" that First Amendment freedoms need to survive. *See New York Times Co., supra.* Instead, this court believes the standard adopted by the Supreme Court in *Eastern R.R. Presidents' Conference, supra,* is the

1. *See* 2A Moore's Federal Practice 1936 (1968):
Conditions of the mind such as malice . . . may be averred generally since specific averment is normally well nigh impossible unless all the evidence bearing thereon is set out at length.

proper one: liability can be imposed for activities ostensibly consisting of petitioning the government for redress of grievances only if the petitioning is a "sham," and the real purpose is not to obtain governmental action, but to otherwise injure the plaintiff.

The court is persuaded to reach this result by still another argument. It is a corollary of the court's conclusion that liability can never be imposed upon a party for damage caused by governmental action he induced; only if he causes other damages while acting under the guise of attempting to persuade the government will liability be imposed. This, in view of the First Amendment, must be the proper conclusion. The second cause of action in the present case shows the alternative possibility: here Humboldt Fir seeks actual damages and $1,000,000 punitive damages because plaintiffs were allegedly successful in persuading the government that timber sales should be reduced in the Salmon-Trinity Alps Primitive Area. Presumably this success resulted from convincing the Forest Service that the wilderness quality of the area should be preserved as a national resource. This, the court believes, does not constitute the type of conduct for which state civil law can constitutionally impose liability. Even more telling is that counterclaimant would have this court enjoin plaintiffs from future acts of the same type, and punish them for contempt should that order be disobeyed. If counterclaimant's view of the law were correct, this relief might indeed be appropriate. But it is difficult to conceive of a more direct abridgment of "the right of the people . . . to petition the Government for a redress of grievances." And this is true even if it is shown that plaintiffs were motivated by malice.

## II.

Applying this standard to Humboldt Fir's counterclaim, it is clear that both counts must be dismissed. In each all that is alleged is that plaintiffs by various acts induced or sought to induce a department of the federal government to take certain actions. These acts, Humboldt Fir alleges, were done "intentionally, willfully, and wrongfully." Certainly they were intentional and willful; plaintiffs intended to and did petition the government for redress utilizing the procedure established for that purpose. Whether or not it was wrongful is for this court to decide; this conclusory allegation does not improve counterclaimant's pleading. Hopper v. Lennen & Mitchell, 52 F.Supp. 319 (S.D.Cal. 1943), aff'd, 146 F.2d 364 (9th Cir. 1944); see Jewell v. City of Covington, 425 F.2d 459, 460 (5th Cir.1970). Thus, nothing more is alleged than that plaintiffs intentionally exercised their right to petition the government, and this is precisely that with which this court cannot interfere.

It is therefore ordered that Humboldt Fir, Inc.'s counterclaim and "cross-complaint" be dismissed for failure to state a claim upon which relief can be granted.