424 F.Supp. 163 (1976)
CENTRAL BANK OF CLAYTON, a corporation, Plaintiff,
v.
CLAYTON BANK, a corp., et al., Defendants.
No. 75-706C(A).
United States District Court, E. D. Missouri, E. D.
April 13, 1976.
*164 Lloyd E. Boas, St. Louis, Mo., for plaintiff.
Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, Mo., Mortimer A. Rosecan, St. Louis, Mo., Lashly, Caruthers, Thies, Rava & Hamel, Clayton, Mo., Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER
HARPER, District Judge.
This matter is before the Court on the separate motions of defendants, Clayton Bank and James R. James, Jr., St. Louis County National Bank and Edward H. Schmidt, and First National Bank of Clayton and Al J. Ruch, to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6) F.R.C.P.
Plaintiff brings this action pursuant to 15 U.S.C. §§ 1, 2 and 15, seeking treble damages for an alleged violation of the Sherman and Clayton Antitrust Acts. The principal allegations in the complaint may be summarized as follows: Plaintiff corporation filed with the Missouri Commissioner of Finance an application for a charter for a bank in Clayton, Missouri. Defendant corporations and their chief executive officers, respectively, who would be competitors of the plaintiff in the banking business in Clayton, Missouri, if the bank charter were granted, intervened in state administrative proceedings and, pursuant to Mo.Rev.Stat. §§ 361.094-.096, opposed the issuance of plaintiff's charter. When the charter was issued by the Commissioner on February 28, 1972, the defendants appealed. The State Banking Board reversed and issued an order revoking the charter. The Board's order was sustained by the Circuit Court of St. Louis County. A subsequent appeal to the Missouri Court of Appeals, St. Louis District, reversed the Circuit Court, thereby reinstating plaintiff's charter.
Briefly stated, plaintiff alleges that defendants' intervention in those administrative and judicial proceedings was done pursuant to an "agreement and conspiracy * * * as a part of a scheme to restrain commerce and prevent competition" in their primary service area. It is further alleged that defendants' concerted opposition to the granting of plaintiff's charter was based solely on several "sham and spurious" grounds as part of a scheme to "restrain and prevent lawful competition in the banking business in the City of Clayton, and [that] such conduct constitutes a violation of sections 1 and 2 of Title 15 USCA." Plaintiff specifically alleges:
"26. That throughout all of the proceedings hereinabove referred to the defendants based their opposition to the granting of the plaintiff's charter solely on the following sham and spurious grounds:
"26(a). that their banks were and could meet the present and future banking needs of the community;
"26(b). that under the Missouri facility law the existing banks could provide convenient banking services in other areas of the City;
"26(c). that existing banking services were adequately serving the business and individual banking needs of the community;
"26(d). that a new additional bank is not necessary or desirable for the City of Clayton;
"26(e). that a new bank could have an adverse effect upon the future `growth rate' of existing banks;
"26(f). that a new bank would draw some deposits from existing banks but that neither the solvency nor the profits of the existing banks would be impaired;
"26(g). that a new bank would be an additional competitive load;

*165 "26(h). that a new bank would not add any new banking services which are not presently available to the public;
"26(i). that a new bank would add nothing to the driving convenience of the public;
"26(j). that there had been no public complaint about the inadequacy of existing banking services;
"26(k). that the grant of a charter to incorporators having an agreement to sell their shares to a Registered Bank Holding Company after the charter is granted and when and if such sale is approved by the Federal Reserve Board would constitute a violation of the Missouri law prohibiting branch banking.
"27. That the above mentioned grounds are sham and spurious for the reason that they have no relevancy to the issues to be determined in granting or refusing an application for a bank charter, and therefore such facts, even if true, would not justify the denial of a bank charter." * * *
Damages are alleged as a direct result of having been prevented from engaging in the banking business. Defendants deny, in effect, that their conduct in invoking these state governmental processes constitutes a violation of the Sherman and Clayton Acts.
This Court has jurisdiction over the subject matter. See Goldfarb v. Viriginia State Bar, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975).
Two grounds are presented for the several motions to dismiss: First, that the specific conduct of defendants did not violate 15 U.S.C. §§ 1 and 2, and second, that, if a violation does exist, the specific conduct of defendants was not the proximate cause of plaintiff's damages. Since we dispose of this matter on the first ground, we do not consider the second.
In Jenkins v. McKeithen, 395 U.S. 411, 421-22, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969), the Court said:
"For the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted. (Omitting citation.) And, the complaint is to be liberally construed in favor of plaintiff. See Fed.Rule Civ.Proc. 8(f); Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint should not be dismissed unless it appears that appellant could `prove no set of facts in support of his claim which would entitle him to relief.' Conley v. Gibson, supra, at 45-46, 78 S.Ct. [99] at 102."
See also: Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974); Barnes v. Dorsey, 480 F.2d 1057, 1060 (8th Cir. 1973). In Bramlet v. Wilson, supra, at 716, the Court said:
"Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."
The case before the Court is such a case for dismissal because plaintiff misconstrues the nature of the cause of action authorized by the "sham exception" to the Noerr-Pennington doctrine.
No cause of action is alleged here insofar as the complaint is predicated upon mere attempts by defendants to lawfully induce state administrative and judicial action favorable to themselves and detrimental to plaintiff. This effort to induce favorable governmental action, even for an anti-competitive purpose, is not a violation of the antitrust laws. In Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), the plaintiffs alleged a pervasive and vicious publicity campaign designed and motivated solely to destroy the competing trucking business by influencing legislative and executive governmental treatment favorable to the railroads. The Court rejected the contention that the vicious nature and anti-competitive motivation behind the deceptive campaign rendered the conduct actionable: "[T]he *166 Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." Id. at 136, 81 S.Ct. at 529. The Court did, however, provide an exception, commonly known as the "sham exception", to this rule, where conduct "ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified." Id. at 144, 81 S.Ct. at 533. See United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). In California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510-11, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), this antitrust immunity was extended to administrative agencies and courts. The Court there said:
"We conclude that it would be destructive of rights of association and of petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and procedures of state * * * agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitors." Id. at 510-11, 92 S.Ct. at 612.
California Motor Transport also extended the "sham" exception and held that the plaintiffs had alleged a case that fell within it. The conduct alleged was found not to be a genuine effort to influence public officials. Here, however, plaintiffs have not alleged that defendants' conduct was "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." (Emphasis added.) Noerr, supra, 365 U.S. at 144, 81 S.Ct. at 533. Rather, plaintiff alleges that defendants urged "sham and spurious" grounds for denial of plaintiff's bank charter, an oblique suggestion, perhaps, without specifically so stating, that defendants' conduct is therefore within the "sham exception" to Noerr, as typified in California Motor Transport. Reading the complaint in the light most favorable to plaintiff and taking all well-pleaded factual averments as true, Conley v. Gibson, supra, plaintiff has failed to aver material facts sufficient to bring defendants' conduct within a cause of action.
Missouri statutes provide for review by the State Banking Board of the grant or denial of a bank charter by the Commissioner of Finance. Mo.Rev.Stat. 361.094(2) directs:
"The state banking board shall hear and by order determine an appeal from the action of the commissioner granting the incorporation * * * of a bank or trust company upon application filed * * * by a bank, trust company, national banking association or other persons claiming to be adversely affected thereby. The application shall state the grounds upon which it is alleged that the action of the commissioner should be stayed, reversed or altered * * *."
Similarly, id. 361.095(3) allows intervention by:
"* * * any person claiming to be adversely affected and any bank, trust company or national banking association located in the city or town and county in which the proposed bank or trust company is to be located upon incorporation or relocation * * *."
Thus, defendants' intervention and subsequent appeals in the state agencies and courts were authorized by the state legislature. The grounds for refusing or granting plaintiff's bank charter, including those urged by defendants for its refusal quoted in paragraph 24 of the complaint, were properly considered by those agencies and courts for their probative value. Central Bank of Clayton v. State Banking Board of Missouri, 509 S.W.2d 175 (Mo.App.1975). Whether or not those grounds were "sham or spurious" has no bearing on whether or not a federal antitrust claim exists within the "sham exception" to the Noerr-Pennington doctrine, i. e., where conduct "ostensibly *167 directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor * *." Noerr, supra, 365 U.S. at 144, 81 S.Ct. at 533 (emphasis added).
The Court in California Motor Transport, supra, noted that unethical conduct that may be tolerated in a political context may result in violations in the setting of the adjudicatory process. The opinion cites as examples of such conduct: Perjury, use of a patent obtained by fraud to exclude a competitor from the market, Walker Process Equipment v. Food Machinery & Chemical Corp., 382 U.S. 172, 175-77, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), conspiracy with a licensing authority to eliminate a competitor, Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 707, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962), Harman v. Valley Nat'l Bank, 339 F.2d 564 (9th Cir. 1965), bribery of a public purchasing agent, Rangen, Inc. v. Sterling Nelson & Sons, 351 F.2d 851 (9th Cir. 1965), and misrepresentations. 404 U.S. at 512-13. Plaintiff does not allege facts that would suggest any comparable unethical conduct.
As to the alleged "sham and spurious" nature of the grounds used by defendants to oppose plaintiff's application, we refer again to the words of the Supreme Court in California Motor Transport, supra, at 512-13, 92 S.Ct. at 613:
"Opponents before agencies or courts often think poorly of each other's tactics, motions, or defenses and may readily call them baseless. One claim, which a court or agency may think baseless, may go unnoticed; but a pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused. That may be a difficult line to discern and draw. But once it is drawn, the case is established that abuse of those processes produced an illegal result, viz., effectively barring respondents from access to the agencies and courts * * *."
Plaintiff has not alleged a "pattern of baseless, repetitive claims," such as that in Otter Tail Power Co. v. United States, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973), where "[i]t was found that Otter Tail instituted or sponsored litigation involving four towns in its service area which had the effect of halting or delaying efforts to establish municipal [power] systems * * *. `The delay thus occasioned and the large financial burden imposed on the towns' limited treasury dampened local enthusiasm for public ownership.' * * *." Id. at 372, 93 S.Ct. at 1027. Cf. Morgan Drive Away, et al. (Proposed Consent Judgment and Competitive Impact Statement), 41 Fed.Reg. 3758 (D.D.C.1976), where the complaint alleged that defendants, who were engaged in the for-hire transportation of mobile homes, had conspired, inter alia, to exclude other persons from the industry since the early 1950's by carrying out "a series of acts which, as a whole, served to deprive `persons applying for mobile home authority of meaningful access to and of fair hearings before, federal and state agencies and courts.'" (Emphasis added.) Id. at 3762.
In the instant case, there was only one lawsuit. Plaintiff was not effectively barred from access to the agencies and courts under the sham test set out in California Motor Transport. Accord, Bethlehem Plaza v. Campbell, 403 F.Supp. 966, 970 (D.Pa.1975). Furthermore, construing the pleadings liberally, it does not appear that defendants' intervention and subsequent appeals in the state agencies and courts were baseless, since defendants prevailed at two stages of the appeals that followed denial of the charter. While recognizing that the findings of the state courts and agencies are not binding on this Court for the purpose of determining whether or not a federal antitrust case has been successfully pleaded, we think that some weight can be given to this averment as it goes to the existence vel non of one of the elements that comprise the "sham exception" to Noerr-Pennington, as stated in California Motor Transport.
*168 Accordingly, the separate motions of defendants, Clayton Bank and James R. James, Jr., St. Louis County National Bank and Edward H. Schmidt, and First National Bank of Clayton and Al J. Ruch, to dismiss the complaint are sustained, and the cause is dismissed without prejudice for failure to state a claim upon which relief can be granted.