HAVOCO OF AMERICA, LTD., a Delaware Corporation, Plaintiff-Appellant,

v.

Irving HOLLOBOW, Lawrence Taslitz, James Spear, Illinois Residents, and Hollobow and Taslitz, an Illinois Partnership, Defendants-Appellees.

No. 81–2751.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1982.

Decided March 11, 1983.

Donald B. Mackay, Chicago, Ill., for plaintiff-appellant.

Marvin A. Miller, Dennis C. Waldon, Gerald A. Niederman, Marshall Seeder, Roan & Grossman, Chicago, Ill., for defendants-appellees.

Before BAUER and WOOD, Circuit Judges, and CAMPBELL,* Senior District Judge.

WILLIAM J. CAMPBELL, Senior District Judge.

The district court granted summary judgment in favor of the defendants and the plaintiff appeals contending that material issues of fact are in dispute and therefore a trial on the merits is necessary. The complaint originally alleged four separate causes of action; Count I claimed tortious interference with plaintiff's prospective business advantage, Count II claimed injurious falsehood, Count III claimed deliberate interference with plaintiff's public offering, and Count IV claimed violations of various Illinois consumer statutes. Judge Marshall, to whom the case was originally assigned, dis-

---

* The Honorable William J. Campbell, Senior District Judge for the United States District Court for the Northern District of Illinois, is sitting by designation.

missed Counts II and IV. That decision is not at issue in this appeal. Subsequently, the case was reassigned to Judge Getzendanner who granted summary judgment for the defendants on the two remaining counts. The plaintiff then filed this appeal.

We conclude that the district judge properly and thoroughly addressed the issues raised and we hereby affirm and adopt the district court's opinion (reproduced in the Appendix).

## APPENDIX

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| HAVOCO OF AMERICA, LTD., a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 79 C 5261 ) |
| IRVING HOLLOBOW, LAWRENCE TASLITZ, JAMES SPEAR, Illinois residents, and HOLLOBOW & TASLITZ an Illinois partnership, | ) ) ) ) ) ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Susan Getzendanner, United States District Judge

This case is before the court on cross-motions for summary judgment. Plaintiff Havoco of America is a Delaware corporation. The defendants are three individuals, Irving Hollobow, Lawrence Taslitz and James Spear, and an Illinois partnership, the law firm of Hollobow & Taslitz. The three individuals were all investors in two limited partnership programs, the general partner of which was a wholly-owned subsidiary of Havoco.

Judge Marshall, to whom the case was previously assigned, dismissed Counts II and IV, as well as two additional individual defendants, in his Memorandum Opinion of August 21, 1980. In the remaining counts,

I and III, Havoco seeks to impose liability on defendants for the delay and ultimate cancellation of its plan to offer publicly interests in a third limited partnership. Defendants allegedly conspired to force the cancellation of this plan and, in furtherance of this conspiracy, Havoco asserts that they made spurious accusations to regulatory bodies and filed a groundless lawsuit against plaintiff and its subsidiary. Havoco maintains that this conduct amounts to the tort of interference with prospective business advantage. *See Arlington Heights National Bank v. Arlington Heights Federal Savings and Loan Association*, 37 Ill.2d 546, 229 N.E.2d 514 (1967).

In their earlier motions to dismiss and again in their motions for summary judgment, defendants have argued that their conduct in making accusations and in filing the lawsuit is privileged under the First Amendment guarantee of the right to petition, as well as under the Illinois constitution and Illinois common law. Regarding this argument, Judge Marshall stated in his opinion (pp. 10–11) that:

"[A]t this stage of the proceedings we reject defendants' broad assertion that this conduct ... [is] privileged . . . . . While we recognize the need to give breathing room to the exercise of those constitutional rights a total review of all of the cases ... makes clear that those rights can be abused . . . . We must say, however, that the result might be different on a motion for summary judgment when there would be presented to us a full explication of what occurred in the state court."

Both sides have now submitted extensive exhibits to the court, and on the basis of these materials as well as the legal arguments presented in the briefs, the court is now fully apprised of the relevant undisputed facts in this case and concludes that summary judgment in defendants' favor is appropriate.

### Factual Background

In its complaint, Havoco alleges that in April 1977 the three individual defendants

complained to the National Association of Securities Dealers (NASD),[1] accusing Havoco of fraud and mismanagement; that as a result, the NASD issued a "suspension of selling" order prohibiting Havoco from proceeding with its public offering; and that after an investigation, the NASD found the charges to be without merit and lifted its suspension order (¶ 22–24).

The complaint also alleges that in July 1977, the same defendants brought the same charges before the SEC, which then issued a suspension order, but that after an investigation, the SEC "cleared" Havoco and its subsidiaries of all charges (¶ 25–26). Finally, Havoco alleges that all defendants participated in preparing and filing a lawsuit against Havoco and others in 1978 in a "calculated attempt ... to stop plaintiff's proposed public offering." (¶ 34). Havoco alleges that this lawsuit is "wholly baseless."

The materials submitted by the parties, which reveal that there are no disputes as to the underlying material facts, portray a very different scenario than the one painted by the complaint. First of all, it appears that neither the NASD nor the SEC ever issued any "stop" or "suspension" order against Havoco or its subsidiaries. (Indeed, the NASD lacks any authority to issue such orders.)

Secondly, as evidenced by the materials Havoco submitted, the only "accusations" made to the NASD were (1) a phone call from Hollobow to the NASD in May 1977, in which he complained that he had asked Havoco for an audited tax return and a financial statement and had not yet received them; (2) a phone call from Spear to an investigator for the NASD, in which he made the same complaint, and (3) a copy of a letter of July 12, 1977, that Spear wrote to Havoco containing questions Spear had

regarding the tax return. A copy was sent to NASD to "encourage [Havoco's] prompt reply."

With regard to the SEC, and again relying on material submitted by Havoco, specifically on what appears to be memoranda to the files by a staff attorney for the SEC,[2] the individual defendants approached the SEC with complaints relating to alleged misstatements by Havoco in selling them their partnership interests and subsequent mismanagement. Mr. Hollobow also contacted the SEC attorney with a list of questions for Havoco's auditor. The SEC attorney made it clear that he could not release any answers to Hollobow, and then spoke with Havoco's attorneys and auditors regarding the complaints and questions raised by defendants. This SEC "investigation" resulted in no formal action either in favor of or against Havoco.

With regard to the lawsuit, in February, 1978, Hollobow and Taslitz filed an 11 count complaint against Havoco, its subsidiary and others, in the Illinois state court. In June, the trial court dismissed all but Count VII of the complaint, on the grounds that Count VII sought recision of the sale of securities and that plaintiffs had elected this exclusive remedy. The dismissal of the other counts was without prejudice. Shortly afterward, the state court defendants' attorney (plaintiff's here) wrote to the state court plaintiffs (defendants here) offering to repurchase their shares.

On motion of Hollobow and Taslitz, the trial court entered an order in February 1979 entering judgment in their favor on the grounds that an enforceable settlement agreement had been reached between the parties. On March 17, 1981, the Illinois Appellate Court reversed the trial court's order and remanded, concluding that (slip op. at 10):

1. The NASD is not a governmental agency; it is an industry self-regulatory body having jurisdiction over brokers-dealers, not issuers of securities.

2. The admissibility of these documents is not established by any affidavit. Their use on a motion for summary judgment is therefore

questionable and the court would not rely on such evidence to rule against defendants. *Hamilton v. Keystone Tankship Corp.,* 539 F.2d 684, 686 (9th Cir.1976). ("Exhibits which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment.")

"[T]here are substantial questions present relating to the formation and terms of the settlement agreement and that further evidence or testimony is required to satisfactorily resolve these questions."

As of this date, therefore, the case remains pending in the Illinois state courts.

*Liability On the Basis of Filing a Lawsuit*

Although this cause is before the court on cross-motions for summary judgment, the court determines that, to the extent Havoco's complaint attempts to base liability on defendants' wrongful filing of a lawsuit, it is legally insufficient under Illinois common law principles.[3]

Under Illinois law, the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process. *Lyddon v. Shaw,* 56 Ill. App.3d 815, 14 Ill.Dec. 489, 372 N.E.2d 685 (2d Dist.1978). In *Lyddon,* a doctor who had been sued for medical malpractice brought an action for legal malpractice against the attorney who had filed the suit, alleging that the attorney had failed to determine whether there was any evidence to support the medical malpractice claim. The appellate court stated:

"While we acknowledge the seriousness of the medical malpractice problem, we believe there is a more basic and important consideration of public policy *which prohibits any enlargement of the potential tort liability incurred by those who file even groundless lawsuits.* Free access to the courts as a means of settling private claims or disputes is a fundamental component of our judicial system, and 'courts should be open to litigants for the settlement of their rights without fear of prosecution for calling upon the courts to determine such rights.' (*Schwartz v. Schwartz* (1937), 366 Ill. 247, 250 [8 N.E.2d 668].) ... This same public inter-est demands that *we reject any effort to extend the tort liability for the wrongful filing of a lawsuit beyond the ambit of an action for malicious prosecution or abuse of process.*"

56 Ill.App.3d at 821–22, 14 Ill.Dec. at 494, 372 N.E.2d at 690 (emphasis added). *Accord: Berlin v. Nathan,* 64 Ill.App.3d 940, 951–54, 21 Ill.Dec. 682, 688–89, 381 N.E.2d 1367, 1373–74 (1st Dist.1978), *cert. denied,* 444 U.S. 828, 100 S.Ct. 53, 62 L.Ed.2d 36 (1979). It is obvious that Havoco cannot allege the elements of a cause of action for malicious prosecution or abuse of process, and Illinois law prohibits it from basing a cause of action for tortious interference with business opportunity on the wrongful filing of a lawsuit.[4]

This conclusion requires the court to dismiss the defendant law firm of Hollobow & Taslitz, as plaintiff's only allegation against the firm is that it participated in the filing of the lawsuit, and under Illinois law, such conduct cannot give rise to liability as a tortious interference with business relationships.

Having determined that liability may not be based on the filing of the state court suit and having further determined that it is undisputed that neither the NASD nor the SEC ever issued any stop or suspension order against Havoco or its subsidiaries, the court finds the only allegations remaining upon which liability could be based are those contained in Paragraphs 29 and 30 of Counts I and III. In these paragraphs, Havoco alleges that the three individual defendants complained to the NASD and the SEC, that these complaints were false and spurious, that they were made in a deliberate attempt to force Havoco to cancel its proposed public offering, and that as a result of the investigations prompted by these complaints, Havoco in fact had to

3. This argument was not squarely presented to Judge Marshall in the motions to dismiss. Moreover, at that earlier stage of the proceedings the factual record was not complete as to the scope of the defendant law firm's participation.

4. Because the court holds that defendants' filing of the lawsuit is privileged under Illinois law it need not and does not determine under what circumstances such activity is also privileged under the First Amendment.

postpone the public offering, to its economic detriment.[5]

### Liability Based on Complaints to NASD

The materials submitted to the court indicate that Havoco suffered no injury as a result of defendants' communications with the NASD. From the materials submitted by Havoco, it appears that there were a total of three contacts between defendants and the NASD: two phone calls, one by Hollobow and one by Spear, and a letter from Spear to Havoco, a copy of which was sent to the NASD. All of these contacts were made in an attempt to get information from Havoco and its subsidiary regarding the programs in which defendants were investors. No complaints were made regarding the proposed public offering. (See Exhibits A1–A4, Motion for Summary Judgment of Hollobow and Taslitz, and Exhibits A5, A8 and B, Havoco's Motion for Summary Judgment and Answer to Defendants' Motion.) These communications fall far short of accusations of fraud and mismanagement.

Moreover, these same exhibits reveal that the NASD lacked authority over issuers such as Havoco's subsidiary and that it never took any formal action against Havoco or its subsidiary. The only "action taken" that the court can discern is that an investigator for NASD, at defendant Spear's behest, contacted Havoco's auditor to find out when the partnership's financial statement would be released. This falls far short of an "investigation."

Accordingly, the facts on which Havoco relies fail to show, as far as defendants' actions involving the NASD are concerned, one of the essential elements of the tort of interference with business expectancy: an intentional interference causing a termination of the expectancy. Plaintiff has not indicated any causal connection between defendants' communications with the NASD and its postponement of the public offering.

In fact, plaintiff has not established that defendants' communications with the NASD amounted to an "interference" in plaintiff's expected relationship with any potential purchasers. No liability results from defendants' conduct in contacting the NASD.

### Liability Based on Complaints to SEC

The parties have not cited, and the court's own research has not disclosed, any Illinois cases extending the immunity from tort liability [6] that covers the filing of a lawsuit to situations involving complaints before regulatory bodies. And while bringing grievances to such bodies fulfills some of the same societal goals as does the filing of a lawsuit (such as the peaceable resolution of disputes) there are significant differences between the two activities. In the absence of any Illinois precedents, this court is reluctant to extend the holding in cases such as *Lyddon v. Shaw,* 56 Ill.App.3d 815, 14 Ill.Dec. 489, 372 N.E.2d 685 (2d Dist. 1978).

Indeed, the indications are that Illinois would not extend the holding in *Lyddon* to the filing of complaints before regulatory bodies. In *Arlington Heights National Bank v. Arlington Heights Federal Savings and Loan Association,* 37 Ill.2d 546, 550–51, 229 N.E.2d 514 (1967) the Illinois Supreme Court addressed the "precise question" of the extent of the privilege to petition local *legislative* bodies, stating:

> "We hold that a private citizen's acts pursuant to his right to petition a legislative body, be it local or otherwise, are conditionally privileged .... Most courts have held ... that in a tort action for interference with contract wherein the alleged wrongful conduct is conditionally privileged, the plaintiff must show actual malice on the part of the defendant in order to sustain such a cause of action."

---

**5.** The public offering was eventually cancelled but as a result of the filing of the lawsuit, not as a result of the SEC investigation.

**6.** There are two exceptions to this immunity from tort liability, as noted above, the torts of malicious prosecution and abuse of process.

It thus appears that under Illinois law defendants' conduct in complaining to the SEC would constitute similar petitioning activity and would be conditionally privileged, depending on whether plaintiff pleaded and proved actual malice.

"Actual malice" involves more than ill-will:

"[T]here must be a desire to harm, which is independent of and unrelated to a desire to protect the acting party's rights and which is not reasonably related to the defense of a recognized property or social interest."

*Arlington Heights,* 37 Ill.2d at 551, 229 N.E.2d 514. The bare assertion of malice is not sufficient; the complaint must set forth factual allegations supporting the existence of actual malice. *Id.*

Havoco's complaint alleges that defendants "knowingly and maliciously" made false accusations to the SEC in a "deliberate attempt to force the cancellation of the [proposed] public offering." These allegations do not establish the requisite actual malice.

Even assuming, *arguendo,* that the allegations of the complaint were sufficient, the materials submitted by Havoco negate any inference that defendants acted out of "a desire to harm ... independent of and unrelated to a desire to protect [their] rights." The materials submitted to the court show that the complaints and questions defendants communicated to the SEC pertained to the limited partnerships in which they were investors. The materials thus establish that defendants were acting in a manner reasonably related to the protection of their economic interests. That their actions may have been motivated by ill-will towards Havoco or may have had an adverse impact on Havoco's interests does not establish actual malice. Accordingly, the court concludes that defendants' conduct in complaining to the SEC was privileged under Illinois law.

Assuming, *arguendo,* that under Illinois law defendants' conduct was not privileged, this court agrees with the analysis of the district court for the Northern District of California in *Sierra Club v. Butz,* 349 F.Supp. 934 (N.D.Cal.1972). In that case, the court rejected the malice standard set forth in *Arlington Heights* as inadequate to protect the "breathing space" that the First Amendment right to petition requires. The court reasoned that malice is too easy to allege, and therefore concluded that the "sham" standard was the correct one, stating:

"[L]iability can be imposed for activities ostensibly consisting of petitioning the government for redress of grievances only if the petitioning is a "sham," and the real purpose is not to obtain governmental action, but to otherwise injure the plaintiff."

349 F.Supp. at 939.

The *Sierra Club* court, in applying this "sham" standard, was relying on a line of Supreme Court cases holding that activity within the ambit of the right to petition the government for redress of grievances is privileged under the First Amendment, unless the alleged petitioning activity "is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of [another]." *Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc.,* 365 U.S. 127, 144, 81 S.Ct. 523, 533, 5 L.Ed.2d 464 (1961). *See also United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); and *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

In *California Motor Transport,* the Supreme Court held that the *Noerr-Pennington* doctrine applied to adjudicatory proceedings before administrative agencies and to judicial proceedings. And while the doctrine evolved in the context of antitrust litigation, in *Sierra Club* and in other cases the doctrine has been applied to protect the First Amendment right to petition against claims of tortious interference with business relationships. *See First National Bank of Omaha v. Marquette National Bank of Minneapolis,* 482 F.Supp. 514, 524 (D.Minn. 1979), *aff'd,* 636 F.2d 195 (8th Cir.1980),

*cert. denied,* 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981); *Pennwalt Corp. v. Zenith Laboratories, Inc.,* 472 F.Supp. 413, 424 (E.D.Mich.1979), *appeal dism'd,* 615 F.2d 1362 (6th Cir.1980).

For purposes of this motion, the court treats as undisputed the allegations that defendants registered complaints with the SEC, that as a result the SEC conducted an investigation of Havoco or its subsidiary, and that this investigation caused Havoco to postpone its planned public offering. Such conduct is privileged as petitioning activity and cannot form the basis of a claim for tortious interference with business relationships, unless, as plaintiff argues, defendants' actions were a "mere sham."

In an adjudicatory context, the bringing of a claim that an opponent or even the adjudicatory body itself considers baseless will not ordinarily result in sanctions. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 513, 92 S.Ct. 609, 613, 30 L.Ed.2d 642 (1972); *Metro Cable Co. v. CATV of Rockford, Inc.,* 516 F.2d 220, 227 (7th Cir.1975). However, "a pattern of baseless, repetitive claims" may establish the "sham" nature of the petitioning activity and result in the loss of the privilege. *California Motor Transport, id.*

In California Motor Transport, the allegations were that defendants intended to oppose every application by plaintiffs for new or expanded operating rights through all stages of administrative and judicial review, regardless of the merits, in an effort to intimidate plaintiffs from seeking such rights. As the Seventh Circuit has noted:

> "In California Motor Transport ... the defendants were alleged to have engaged in conduct that was not genuinely aimed at securing favorable governmental action but at discouraging competitors from seeking governmental action .... [T]he plaintiffs' injury was caused, not by governmental action, but by defendants' 'sham' activities."

*Metro Cable,* 516 F.2d at 232.

This case is unlike that in *California Motor Transport.* Here, there is no pattern of baseless, repetitive claims, although Havoco argues that there is. *Cf. Central Bank of Clayton v. Clayton Bank,* 424 F.Supp. 163, 167 (E.D.Mo.1976), *aff'd* 553 F.2d 102 (8th Cir.), *cert. denied* 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977) (one lawsuit does not constitute a pattern). Defendants have only been pressing one claim, rooted in their displeasure with the management of their investments, and have been seeking a forum in which to argue the merits of their claim. They contacted the NASD and discovered it had no authority. They contacted the SEC, which after investigation took a somewhat ambiguous posture, neither prosecuting nor clearing Havoco and its subsidiary. Finally, they filed a lawsuit, the merits of which have not yet been litigated.

Havoco has alleged that the SEC issued a stop order on the basis of defendant's complaints and that this prevented it from going forward with its public offering. Clearly, however, the SEC did not issue any such order. Havoco is thus left with the argument that defendants complained to the SEC, not out of any desire to protect their investments or to instigate official action, but solely out of a desire to block the public offering.

Havoco cannot allege any facts to support this argument. Defendants had substantial investments in the partnership program and the materials submitted to the court indicate an on-going dispute between plaintiff and defendants. The First Amendment guarantees defendants' right to attempt to enlist the government on their side of the dispute. That this petitioning activity may have had incidentally an adverse effect on plaintiff's business, even that defendants knew this and intended such a result, has no effect on the First Amendment's protection, as long as the activity represents a genuine attempt to influence governmental action. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 143–44, 81 S.Ct. 523, 532–33, 5 L.Ed.2d 464 (1961). *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607,

615 (8th Cir.1980); *Central Bank of Clayton v. Clayton Bank*, 424 F.Supp. 163, 165 (E.D. Mo.1976), *aff'd*, 553 F.2d 102 (8th Cir.), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977). Here, the allegations in Havoco's complaint represent the end defendants wanted to achieve: governmental intervention against Havoco. That they were unsuccessful does not automatically transform their attempt into a sham.

 In summary, a plaintiff must do more than merely allege that defendant's petitioning activity was a sham in order to overcome the First Amendment privilege. Otherwise, the right to petition without fear of sanctions would become a mockery. The "sham" exception cannot be used to chill this constitutional right. *Cf. Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1345 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977) (in civil rights case, Court rejects argument that knowing falsity deprives administrative complaint of constitutional protection, due to ease of alleging such knowing falsity); and *Sierra Club v. Butz*, 349 F.Supp. 934, 938–39 (N.D.Cal.1972) (court rejects malice standard due to ease of alleging malice). Havoco, therefore, must allege facts that demonstrate that defendants' complaints to the SEC were merely a ruse and that defendants were not truly seeking favorable governmental action. Havoco has not done so, and in the circumstances of this case as evidenced by the materials submitted, the court cannot see how it could.

Accordingly, the court grants defendants' motions for summary judgment and denies plaintiff's motion for summary judgment. The case is thereby dismissed.

> /s/ SUSAN GETZENDANNER
> Susan Getzendanner
> United States District Judge

Dated: October 8, 1981