Andrew J. WHELAN, et al., Plaintiffs,

v.

Tyler ABELL, et al., Defendants.

Civ. A. Nos. 87–0442, 87–1763.

United States District Court,
District of Columbia.

June 22, 1993.

Loren Kieve, Debevoise & Plimpton, Washington, DC, for plaintiffs.

Nelson Deckelbaum, Deckelbaum, Ogens & Fischer, Chartered, Washington, DC, for defendant Tyler Abell.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This case arose out of the failure of Animated Playhouses Corporation (APC), a restaurant chain founded by Plaintiffs Andrew Whelan and Edward Whelan. In 1982 Defendants Tyler Abell and John Toomey purchased one of APC's restaurants, located in Putty Hill, Maryland. They subsequently sold a one-third interest in their investment to Anthony Chase,[1] and formed a partnership, called ACT Associates. The Putty Hill restaurant, as well as the entire chain,

---

1. Anthony Chase has died, and his estate is a defendant in this case. Before trial, a default judgment was entered against the Chase Estate. Following remand from the Court of Appeals, this Court set aside that default. *See* Memorandum Opinion and Order dated April 20, 1993.

proved unsuccessful and a dispute over the cause of the business' failure ensued.

In February 1984, after negotiations between the parties broke down, Abell wrote a letter to the Maryland Securities Commission, complaining that APC had violated Maryland franchise law (the "MSC letter"). In March 1984 ACT Associates filed a lawsuit against the Whelans and APC, alleging mail and wire fraud, securities fraud and franchise law violations (the "Putty Hill lawsuit"). The claims in the Putty Hill suit all stemmed from alleged misrepresentations made during the purchase negotiations for the Putty Hill restaurant. Abell and Toomey moved to dismiss the Whelans from the case in October 1984 and the Putty Hill action subsequently was dismissed.

In December 1984 ACT filed a second lawsuit against the lawyers who had represented the Whelans and APC during the sale of the Putty Hill restaurant; neither the Whelans nor APC were named as defendants in this suit. Following a bench trial, the suit was dismissed by Judge Gesell.

In 1987 the Whelans turned the tables and sued Abell, Chase and Toomey, alleging a number of common law torts, including malicious prosecution, tortious interference with prospective business advantage, breach of fiduciary duty, abuse of process and wrongful involvement in litigation. It is this suit which is currently before this Court on remand from the Court of Appeals.

Before the case went to trial, the district court granted Defendants Abell's and Toomey's partial summary judgment motions to dismiss the malicious prosecution, abuse of process and wrongful involvement in litigation claims, leaving only Plaintiffs' claims for tortious interference with prospective business advantage and breach of fiduciary duty. A jury trial on these claims was held in May 1989. At the close of Plaintiffs' case, the trial court directed a verdict for Defendants Abell and Toomey on breach of fiduciary duty. The jury returned a verdict for Andrew Whelan and against Defendants, but against Edward Whelan and for Defendants, on the remaining tortious interference claim. Defendants filed a motion for judgment n.o.v. or a new trial based on 19 separate grounds. The trial court granted Defendants' motion for judgment n.o.v. on one of the grounds raised, but did not rule on the other 18 grounds.

The Court of Appeals affirmed the district court's directed verdict on the breach of fiduciary duty claim. The Court of Appeals reversed the district court's grant of summary judgment to the Defendants on the malicious prosecution, abuse of process and wrongful involvement in litigation claims. The Court of Appeals also reversed the district court's award of judgment n.o.v. and remanded the case for a determination of the other grounds for judgment n.o.v. raised in the defendants' original j.n.o.v. motion. *See Whelan v. Abell,* 953 F.2d .663 (D.C.Cir.1992).

It is Defendants' motion for judgment n.o.v. which is presently before this Court.[2] Consistent with the Court of Appeals' decision, if Defendants' motion were to be denied, the jury verdict would not be reinstated, but a second trial would be required on Andrew Whelan's tortious interference claim as well as on Andrew and Edward Whelan's abusive process, malicious prosecution and wrongful involvement in litigation claims.

Defendants have pared down their motion for judgment n.o.v. to two grounds which they seek to have this Court review. The first ground concerns whether or not the activities underlying the Whelans' claims in this action were privileged. The second ground concerns whether or not Defendants possessed the actual knowledge of Andrew Whelan's prospective business advantage required for liability. Because the Court agrees with Defendants' first argument, the Court need not, and will not, reach the second.[3]

**2.** All Defendants, including the Chase Estate, have joined in this motion.

**3.** The claim initially at issue in Defendants' motion for judgment n.o.v. was the claim for tortious interference with prospective business advantage. The other claims raised by Plaintiffs which are potentially subject to a new trial—i.e. malicious prosecution, abuse of process and wrongful involvement in litigation—also are predicated on the wrongful institution of the administrative and legal proceedings which Defendants claim are privileged. Thus, if the Court

Plaintiffs' complaint is predicated on the allegedly wrongful institution of administrative and legal proceedings (the MSC letter and the Putty Hill lawsuit) by the Defendants against the Plaintiffs. Defendants argue that these activities were privileged and therefore Plaintiffs' claims fail as a matter of law.

The First Amendment protects an individual's right to petition his or her government. Thus, a person cannot be held liable as a result of his or her filing a good-faith lawsuit or administrative claim or otherwise seeking governmental redress. *See Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); accord, *Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). This principle has become known as the Noerr–Pennington Doctrine.

The immunity provided under Noerr–Pennington is qualified; a so-called "sham exception" exists. Under the sham exception, otherwise protected activity does not qualify for Noerr–Pennington immunity "if it is a mere sham to cover an attempt to interfere directly with the business relationships of a competitor." *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries*, — U.S. —, —, 113 S.Ct. 1920, 1923, 123 L.Ed.2d 611 (1993). In *Professional Real Estate*, decided after the Court of Appeals remanded the case presently before this Court, the Supreme Court articulated a two-part test to determine whether or not activity otherwise protected under Noerr–Pennington loses its immunity under the sham exception:

First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized ... Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process—as opposed to the outcome of that process—as an anti-competitive weapon.

*Id.*, at — – —, 113 S.Ct. at 1922.

Plaintiffs' primary argument against invoking Noerr–Pennington, as explained by *Professional Real Estate Investors*, is that the doctrine is only applicable to anti-trust suits. This Court can find no basis to so narrowly limit the doctrine. Certainly, if a person has a protected right to bring an objectively-based antitrust claim against a competitor, the same protection must be afforded to others who bring other such objectively-based claims and allegations before a government agency or court. Indeed, "while the doctrine evolved in the context of anti-trust litigation ... the doctrine has been applied to protect the First Amendment right to petition against claims of tortious interference with business relations." *Havoco of America, Ltd. v. Hollobow*, 702 F.2d 643, 649 (7th Cir.1983) (citations omitted).[4]

Second, Plaintiffs argue that this case meets the test for the sham exception to Noerr–Pennington and that therefore this Court can consider Defendants' subjective motivation behind the MSC letter and the Putty Hill lawsuit. *Professional Real Estate Investors* clearly states that a court is to reach the second, subjective, prong of the

agrees with Defendants that the Putty Hill law suit and the MSC letter are protected activities, it follows that all of Plaintiffs claims will fail as a matter of law.

The fact that the trial court's grant of summary judgment to defendants on these other claims was reversed by the Court of Appeals does not preclude this result. That grant of summary judgment, and subsequent reversal, was based on different grounds.

4. Law enforcement agencies often act on information provided by persons motivated by ill will or evil motives. Some federal agencies, such as the Internal Revenue Service and the Securities Exchange Commission, have "bounty" provisions to award persons who provide information concerning violations of the statutes the agency is charged with enforcing. When it comes to law enforcement, the government must be able to receive information even from the "devil" if such information has an objective basis.

sham test if and only if the first, objective, prong is satisfied and the MSC letter or the Putty Hill litigation was objectively baseless. If neither the MSC letter nor the Putty Hill lawsuit was objectively baseless, then Defendants' purpose in sending the letter and filing the suit, however improper, does not strip them of Noerr–Pennington immunity for these activities.

In this case, as noted, Defendants invoked governmental processes on two occasions. First, in February 1984, Abell sent a letter of complaint to the Maryland Securities Commission, complaining of violations of Maryland franchise law on the part of APC. Following receipt of that letter, the Maryland Commission conducted an investigation and, in March 1984, issued an Order to Show Cause why the registration of APC and APC's CEO Andrew Whelan to offer and sell franchises in Maryland should not be denied, suspended or revoked for engaging in the offer and sale of unregistered franchises in violation of the Maryland franchise regulations and why a Cease and Desist Order should not be issued against them for engaging in the offer and sale of an unregistered security in violation of Maryland securities law. *See In the Matter of Animated Playhouse Corporation and Andrew Whelan*, Administrative Proceeding before the Securities Commission, Office of the Attorney General, Maryland Division of Securities (3/7/84).[5]

As a result of this Order to Show Cause, in November 1984 Andrew Whelan entered into an "Undertaking" in which he agreed not to make any offers of sales of franchises which would violate Maryland law. Andrew Whelan neither admitted nor denied the Commission's allegations in signing the Undertaking; thus, the MSC proceedings did not end favorably for Mr. Whelan or APC. While Whelan and APC did not admit to the violations, there is nothing in the record to suggest that Whelan or APC had complied with the Maryland franchise and securities laws or that the action taken by the MSC was inappropriate. Indeed, Plaintiffs have not in any respect formally challenged the propri-

ety of the Maryland action or the basis for it. Given the independent investigation and disposition in the administrative proceeding in Maryland, it is clear that Abell's letter to the MSC was not "objectively baseless". By any standard, the MSC letter would be protected under Noerr–Pennington and cannot provide a basis for Plaintiffs' tortious interference, malicious prosecution, abuse of process or wrongful involvement in litigation claims.

The second occasion in which Plaintiffs claim that Defendants wrongfully instituted government action was the Defendants' filing of the Putty Hill law suit against the Whelans in March 1984. That lawsuit was predicated essentially on the same issues as the MSC proceeding, namely franchise and securities law violations on the part of the Whelans and APC. This Court need look no further than the response of the MSC to the allegations before it. In short, the fact that the MSC conducted an independent investigation and found sufficient evidence to issue an order to show cause and enter a consent decree with Whelan and APC compels this Court to conclude that there was an objective determination that the charges filed by Defendants in the Putty Hill lawsuit were not baseless. Therefore, Defendants are entitled to immunity for the filing of the Putty Hill suit.

Based on the well-developed record that exists at this point in this litigation, this Court holds that neither the MSC letter nor the Putty Hill lawsuit were objectively meritless under *Professional Real Estate* and that therefore the sham exception to Noerr–Pennington does not apply to this case. Because each of the predicate acts on which each of the claims remaining in this case rest is protected, the action before this Court is dismissed in its entirety.

### ORDER

This matter is before the Court on Defendants' Motion for Judgment N.O.V. Upon consideration of Defendants' motion and Plaintiffs' Opposition thereto, and after hearing oral argument from counsel for both

---

**5.** Other than Abell's sending the letter of complaint to the MSC, none of the Defendants in the action presently before this Court had any in-

volvement with the investigation conducted by MSC into APC and Mr. Whelan, nor in the Undertaking which followed.

sides at a hearing held on May 28, 1993, for the reasons stated in the foregoing Memorandum Opinion, it is hereby

ORDERED that Defendants' Motion for Judgment N.O.V. is granted; and it is

FURTHER ORDERED that all claims remaining in this action are dismissed.