# K & J Coal Company, Inc. v. Lingle

*Joseph Colavecchio,* for plaintiff.

*Stephen C. Braverman,* for defendants.

REILLY, *P.J.,* August 15, 1983 — This matter comes before the court on defendants' preliminary objections to a four count complaint in trespass filed by plaintiff above-named. The basic controversy arises out of a letter purportedly written by Benson H. Lingle and directed to one Mr. Glenn Bowers of the Pennsylvania Game Commission allegedly impugning the coal mining practices of K & J Coal Company and its fitness to mine on State Game Lands. In addition thereto, said complaint also alleges that two other letters were also sent by Mr. Lingle to K & J Coal Company itself, which letter purportedly contained various false allegations, implied threats, and further impugned the integrity of local counsel for plaintiff, all with the intent and purpose of "terrifying" plaintiff into dropping a previous legal action then under way against defendants.

With regards to the letter directed to the Game Commission, defendants argue that plaintiff has failed to state a cause of action in libel based thereon in that said letter was absolutely privileged. This court agrees with defendants and therefore dismisses Counts I and IV of plaintiff's complaint insofar as they allege libel based on said letter.

The court notes that the letter to Mr. Bowers in this case was a communication directed to the governmental agency charged with overseeing the State Games Lands, viz., the Pennsylvania Game Commission, and did concern the fitness of K & J Coal Company to mine on said lands. Defendants'

First Amendment right to petition the government is, therefore, most evidently involved in this matter from the face of plaintiff's complaint. As such, plaintiff's right to seek a state tort recovery in libel must be weighed against that right. It must also be remembered that plaintiff's right to recover in this case is even further limited, and defendants' right to petition is even further bolstered by those laws and regulations mandating public comment and participation in all aspects of coal mining. See, e.g.: 25 Pa. Code §86.32 (inviting public comments on permit applications) and 25 Pa. Code §86.215 (inviting information from citizens concerning violations of mining regulations and citizen requests for investigation of the same).

With those circumstances and principles in mind, the court further notes that the Court of Common Pleas in Cambria County was presented with a situation analogous to the instant matter in Central Transportation, Inc., v. Stephens, 10 D.&C.3d 755 (1979). Defendants in that case sent a petition to the Cambria School District complaining of the "deplorable and unsafe condition of the school buses" being used by the School District. Id. at 759. The operator of the buses then sued for libel. The court, however, dismissed the complaint on defendants' preliminary objections holding that the First Amendment right to petition the government clothed defendants' actions with an absolute privilege even if defendants' actions were the result of malice on their part.

In reaching that conclusion, the Cambria County Court was guided by the leading United States Supreme Court case in the area, viz., Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S. Ct. 523, 5 L.Ed.2d 464 (1961). The Noerr case stands for the proposition that a pe-

titioner to the government is shielded from civil liability by the First Amendment regardless of his motive, malicious or not, so long as his petitioning was not a "sham" and was, at least in part, designed to influence governmental behavior. With that principle in mind, the court in *Stephens,* op. cit:, held that:

"A party may well exhibit malice in its attempt to influence government and yet remain protected against civil liability if its petitioning was directed at inducing *governmental action or restraint.*

'The rationale for the 'sham' test is readily apparent; representative government is vitally interested in the views of the citizenry. The people shape and influence governmental policies through their representatives. Communication directed at the government must, therefore, receive the highest deference.

'"The threat of common law tort liability *must not be allowed to deter any speech intended to influence the government,* and in order to assure this end, the law overlooks both the obvious and hidden motives of petitioner.

"The import of the court decisions in this area of the law is that the mantle of privilege is removed when the *only* purpose of (the) petition is to transmit Petititioner's invective feelings, i.e., when the petition is a complete sham." Stephens, id., 10 D.&C. 3d, at 758. (Emphasis in original.)

This court agrees with the Cambria County Court's reading of Noerr. Moreover, this court is also influenced by the United States District Court for the Northern District of California's further explanation of the "sham" test in its decision in Sierra Club v. Butz, 349 F. Supp. 934 (1972), and therefore also adopts that explanation as its own, said explanation being as follows:

". . . liability can be imposed for activities ostensibly consisting of petitioning the government for redress of grievances only if the petitioning is a 'sham,' and the real purpose is not to obtain governmental action, but to otherwise injure the plaintiff.

". . . [Moreover], it is a corollary of [said] conclusion that liability can never be imposed upon a party for damage caused by governmental action he induced; only if he causes other damage while acting under the guise of attempting to persuade the government will liability be imposed." Sierra Club v. Butz, id., 349 F. Supp., at 939.

In applying the above-noted principles to the instant case, this court is satisfied that the petition in this case was not a complete "sham" in that plaintiff alleges nowhere in its complaint that said letter was ever communicated to anyone other than the government. The only results of said letter would, therefore, necessarily have been to induce either governmental action (by withdrawing any permits previously granted K & J Coal to mine on State Game Lands) or governmental restraint (by denying K & J Coal any future permits to mine on State Game Lands). Said letter could not have been sent to otherwise injure plaintiff since no other person is alleged to have received communication of the same. As such, defendants were absolutely privileged in said communication regardless of their motives.

In Counts II and III of its complaint, plaintiff further avers that two additional letters were authored by Mr. Lingle and sent to plaintiff itself, which letters contained various false allegations, implied threats, and assorted other statements impugning the integrity of local counsel for plaintiff, all with the intent of "terrifying" plaintiff into withdrawing a previous legal action then under way against Defen-

dants. This court agrees with defendants, however, that plaintiff has also failed to state a cause of action in libel in those counts since nowhere therein does plaintiff allege publication of the purported libelous statements to any party other than plaintiff itself. The same cannot, therefore, give rise to a cause of action in libel. 42 Pa. C.S.A. §8343(a).

Moreover, this court further agrees with defendants that said counts do not otherwise give rise to any other actionable cause founded in tort. The nearest recognized tort theory contained therein cognizable to the court would possibly be something akin to intentional infliction of emotional distress in that K & J avers that defendants purpose was to "terrify" it into dropping a previous legal action. The court notes, however, that such an action is obviously unavailable to plaintiff here in that it is a sophisticated corporate litigant. Moreover, and more importantly, the court notes further that even if said counts would otherwise state a cause recoverable in tort, Plaintiff has nevertheless failed to allege any damage therein since it admits that it did not drop the previous action and, in fact, prosecuted the same to a successful conclusion. Counts II and III must, therefore, also be dismissed for failure to state a cause of action under any recognized theory of tort.

Wherefore, the court enters the following

## ORDER

Now, this August 15, 1983, upon consideration of defendants' preliminary objections filed in the above-captioned matter, it is the order of this court that the complaint in trespass filed by plaintiff to the above term and number be and is hereby dismissed in accordance with the court's memorandum filed herewith.