**BROWNSVILLE GOLDEN AGE NURSING HOME, INC.**
**Plaintiff,**

v.

**Joann WELLS, Paula Snyder, Joyce McNamara, and John Heinz,**
**Defendants.**

**Civ. A. No. 86–926.**

United States District Court,
W.D. Pennsylvania.

Aug. 4, 1987.

Gilbert B. Abramson, Philadelphia, Pa., Anthony S. Dedola, Jr., Uniontown, Pa., for plaintiff.

F. Peter Dixon, J. Tomlinson Fort, Reed Smith Shaw & McClay, Donald P. Minahan, Chief Deputy Atty. Gen., Pittsburgh, Pa., Morgan J. Frankel, Office of Senate Legal Counsel, Washington, D.C., 20510, Jerome T. Foerster, Deputy Atty. Gen., Litigation Section, Harrisburg, Pa., for defendants.

## OPINION

GERALD J. WEBER, District Judge.

This lawsuit was apparently begun on the premise that the best defense is a good offense. Caught in repeated serious violations of state and federal regulations concerning nursing home care of the elderly, plaintiff sued those who brought its misdeeds to the light of day and plaintiff has pursued the case with the zeal of a self-proclaimed martyr. We conclude that plaintiff's claims are without any support in state or federal law and were interposed solely to punish its tormenters.

## FACTS

Plaintiff corporation operated a nursing home for the elderly in Fayette County, Pennsylvania. This home was to provide skilled nursing care to elderly resident patients.

Pennsylvania's Department of Health licenses such care facilities and governs them by means of wide-ranging regulations intended to ensure the health, safety and dignity of the elderly patients. 28 Pa.Code § 201 et seq. Such facilities must also comply with federal regulations in order to qualify for Medicare reimbursement. 42 C.F.R. § 405.1101 et seq.

In May 1983, defendants Joanna Wells and Paula Snyder visited the Golden Age nursing home, looking for a facility that could care for an elderly relative. The conditions observed by these two private individuals prompted them to complain to various state and federal agencies and elected officials, including Senator John Heinz, Chairman of the Senate Select Committee on Aging. They continued their efforts in the following years, refusing to allow the issue to lag or become lost in the bureaucratic morass.

Plaintiff alleges that Snyder and Wells, with the assistance and advice of Senator Heinz, carried on a smear campaign consisting of wild stories of horrendous conditions at Golden Age. According to plaintiff it was this campaign of lies and political pressure which caused revocation of plain-

tiff's license and its Medicare reimbursement contract.

In the course of its self-righteous diatribe and unprofessional ad hominem arguments, plaintiff conveniently omits the simple fact that serious violations of health and safety regulations had been uncovered by state and federal investigators in repeated inspections of plaintiff's facility over several years. Thus plaintiff would not appear to be the holy martyr it claims to be.

Nevertheless, plaintiff scored a victory in the administrative proceedings. Although plaintiff had admitted to a long list of serious violations discovered by investigators in May and June, 1984 (a year after Snyder and Wells visit), the State Health Facility Hearing Board refused to revoke plaintiff's license. However, on appeal the Commonwealth Court reversed the decision of the Board, finding it to be wholly arbitrary and without support in the record, and ordered immediate revocation of plaintiff's license. *Commonwealth v. Brownsville Golden Age Nursing Home, Inc.* —— Pa.Commw. ——, 520 A.2d 926 (1987).

The underlying facts of the numerous and varied violations and the procedural history are reported in considerable detail in the Commonwealth Court's opinion. We need not reprise those facts here except to note that the state and federal inspections of May and June 1984 revealed such serious problems as heavy accumulations of dust, dirt and litter, insect infestation, missing plaster, patients unclothed or defecating in full view of staff and visitors, inadequate medical records, deficient nursing care, and serious delays or utter failure in calling a physician when needed.

Plaintiff's Complaint was filed during the pendency of the appeal to Commonwealth Court. Count I charges all four defendants with civil conspiracy in a campaign to force the closing of plaintiff's facility. Counts II–V charge each defendant with tortious interference with present and future contractual relations. Count VI charges Joyce McNamara, an official of the Pennsylvania Department of Health with malicious abuse of process.

Defendant McNamara filed a motion to dismiss and the remaining defendants filed motions for summary judgment. All parties have submitted briefs and extensive evidentiary materials.

## ANALYSIS

### 1) Malicious Abuse of Process

■ In Count VI of the Complaint, plaintiff charges defendant McNamara with malicious abuse of process. In Pennsylvania this tort action is governed by statute, 42 Pa.C.S.A. §§ 8351–8354, and plaintiff must establish three elements to prevail:

1) The underlying proceedings terminated favorably to plaintiff.

2) Defendant acted without probable cause.

3) Defendant acted with malice.

*Shaffer v. Stewart*, 326 Pa.Super. 135, 473 A.2d 1017 (1984). Quite plainly, plaintiff is unable to satisfy the first element. The Commonwealth Court reversed the decision of the Board and ordered the revocation of plaintiff's license. Accordingly, Count VI will be dismissed.

### 2) Tortious Interference with Contractual Relationships

■ In Counts II—V, plaintiff charges that each defendant, by his or her conduct, caused the loss of plaintiff's Medicare reimbursement contract and its Pennsylvania license, thereby preventing it from contracting with patients.

The simple fallacy in plaintiff's claim is that it was not defendants' allegations that caused the decisions adverse to plaintiff. Both state and federal decisions were based on the multiple violations discovered *independently* by their inspectors a year *after* Snyder and Wells visit to the home. Indeed the Commonwealth Court noted that Brownsville failed to rebut most of the reported violations, and revocation of the license was therefore required. 520 A.2d at 939. The truth or falsity of defendants' allegations or the nature of any pressure applied is legally irrelevant. It was the unrebutted violations discovered indepen-

dently in 1984 that mandated revocation of plaintiff's license.

### 3) Civil Conspiracy

Plaintiff faces the same difficulty with causation in this claim. The decision of the Commonwealth Court makes it clear that the license revocation was the result of the inspections conducted in 1984. Even if plaintiff were able to substantiate the somewhat fantastic allegations of the Complaint, the Commonwealth Court's decision would preclude any finding that defendants were the cause of plaintiff's loss.

The best plaintiff could do would be to prove that defendants instigated the investigation that resulted in the unrebutted conclusion that plaintiff actually was in violation of the regulations. We consider it a bit farfetched to believe that a guilty party, caught in violations it cannot deny, can sue the person who told the authorities where to look.

Finally, we note that plaintiff has complained that it has been prevented by the court from conducting discovery on the merits of its claims. It is true that we initially restricted discovery because of several immunities issues, which we need not address because of our decision today on other grounds. In any event, plaintiff was given reams of material on the pertinent issues and well-founded claims of privilege were asserted for other documents. We fail to see what effect further discovery can have on the issues here discussed. As described above, any impropriety by defendants, even if proven, is irrelevant because the violations discovered independently in 1984 required the revocation of plaintiff's license.

### CONCLUSION

For the reasons stated, summary judgment will be entered in favor of all defendants on all claims.