**BROWNSVILLE GOLDEN AGE NURSING HOME, INC.,**
Appellant,

v.

**Joann WELLS, Paula Snyder, Joyce McNamara and John Heinz.**

No. 87–3552.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Feb. 1, 1988.

Decided Feb. 9, 1988.

---

F. Peter Dixon, Dixon, Bogdon & D'Ippolito, Pittsburgh, Pa., for appellees Joann Wells and Paula Snyder.

LeRoy S. Zimmerman, Atty. Gen., Jerome T. Foerster, Deputy Atty. Gen., Gregory R. Neuhauser, Sr. Deputy Atty. Gen., Andrew S. Gordon, Chief Deputy Atty. Gen., Chief, Litigation Section, for appellee Joyce McNamara.

Michael Davidson, Senate Legal Counsel, Ken U. Benjamin, Jr., Deputy Senate Legal Counsel, Morgan J. Frankel, Susan B. Fine, Asst. Senate Legal Counsel, Washington, D.C. (J. Tomlinson Fort, W. Thomas McGough, Jr., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., of counsel), for appellee Senator John Heinz.

Gilbert B. Abramson, Bruce L. Thall, Michael B. Tolcott, Abramson, Cogan, Kogan, Freedman & Thall, P.C., Philadelphia, Pa., for appellant.

Before SLOVITER, STAPLETON and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Brownsville Golden Age Nursing Home, Inc. filed an action alleging that defendants engaged in a civil conspiracy, tortious interference with business relations, and malicious use of process designed to lead to the revocation of its nursing home license by the Commonwealth of Pennsylvania. The district court granted summary judgment in favor of the defendants, and Brownsville appeals. Our review is plenary. *See Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981).

### I.

#### Facts

Brownsville operated a nursing home for the elderly in Fayette County, Pennsylvania. Under state law, facilities such as Brownsville must be licensed by the Department of Health (DOH). DOH regulations for skilled nursing facilities cover ownership and management, 28 Pa.Code § 201 (1988), physical plant and equipment, *id.* § 205 (1987), housekeeping and maintenance, *id.* § 207, fire protection and safety, *id.* § 209, infection control, medical services, dietary and pharmaceutical services and standards for patient care, *id.* § 211. A facility's eligibility for participation in the Medicare and Medicaid programs is jointly monitored by DOH and the federal Health Care Financing Administration (HCFA), an agency of the Department of Health and Human Services, to insure that the facility is complying with the detailed conditions of participation established by federal regulations. *See* 42 U.S.C. § 1395x(j)(15) (1982); 42 C.F.R. §§ 405.1101–.1137, –.1901(b)(2) (1986). Compliance with both federal and state regulations is determined through inspection of the facility by authorized personnel.

A federal survey conducted at Brownsville on May 30, 31, and June 1, 1984 uncovered serious violations of the applicable regulations. In June 1984, state surveyors also found serious violations and deficiencies. The HCFA notified Brownsville that its Medicare agreement was terminated as a result of the reports of the inspections made by it and by the state DOH. The following month, the Pennsylvania Department of Public Welfare notified Brownsville that its termination from Medicare required its termination from Medicaid.

In July 1984, the DOH, based on both the state and federal inspections of Brownsville conducted in May and June, 1984 revealing deficiencies in that home, suspended all new admissions to Brownsville, and ordered Brownsville to show cause why its license should not be suspended. These orders were based on the DOH's determination that Brownsville was guilty of (1) a serious violation of the provisions of the state Health Care Facilities Act and the regulations for licensure, (2) a cyclical pattern of deficiencies over a period of two or more years, and (3) serious violation of laws relating to medical assistance and medicare reimbursement. Brownsville appealed these orders to the Pennsylvania State Health Facility Hearing Board (State Board), which held a hearing in March 1985. The State Board ruled that DOH had failed to prove its charges, refused to revoke Brownsville's license, and lifted the suspension on new admissions to the home. The DOH appealed the State Board's decision to the Commonwealth Court of Pennsylvania.

The Commonwealth Court overturned the State Board's decision, *Commonwealth v. Brownsville Golden Age Nursing Home, Inc.*, 103 Pa.Commw. 449, 520 A.2d 926 (1987). The court detailed the serious deficiencies in the operation of Brownsville as reflected in the inspection reports prepared by state and federal inspectors. These included, among other serious violations, inadequate programs on infection control and the psychosocial needs of patients, *id.* at 931, the failure to treat patients with "consideration, respect, and full recognition of [their] dignity and individuality," *id.*, unsanitary conditions, such as the failure to handle linen in a manner to prevent the spread of infection, *id.* 520 A.2d at 932, "a generally dirty and unkempt dietary facility," *id.* at 933, "serious violations of the laws relating to medical assistance and medicare reimbursement," *id.*, and delays or omissions in notifying attending physicians of significant changes in patients' physical, mental or emotional status, *id.* at 934. In light of these reported conditions, the Commonwealth Court found that the State Board's decision not to revoke

Brownsville's license was unsupported by substantial evidence, and it therefore ordered the revocation of that license. *Id.* at 939. The Supreme Court of Pennsylvania denied Brownsville's petition for allowance of appeal of the Commonwealth Court's decision, *Brownsville Golden Age Nursing Home v. Commonwealth, Dept. of Health*, 515 Pa. 610, 529 A.2d 1083 (1987) (per curiam), thereby rendering that decision final under the state's law.

While the state proceedings were underway, Brownsville pursued its federal remedies and appealed from its Medicare decertification. An administrative law judge, giving collateral estoppel effect to the then outstanding State Board's decision not to revoke Brownsville's license, ordered that Brownsville's Medicare reimbursement be restored. However, when the Commonwealth Court reversed the State Board's decision, Brownsville again lost its Medicare certification.

## II.

### Procedural History

In April 1986, while Brownsville had temporarily prevailed in both the state and federal administrative areas, it filed the present suit in state court against two private individuals, Joanna Wells and Paula Snyder, Director of the Division of Long–Term Care of the Pennsylvania Department of Health, Joyce McNamara, and John Heinz, a United States Senator from Pennsylvania and then Chairman of the Senate's Special Committee on Aging. The complaint alleged that the defendants had engaged in a civil conspiracy to interfere with Brownsville's present and prospective business relations, and that McNamara had maliciously used process in improperly instituting DOH proceedings against the home. The suit was removed to federal court by Senator Heinz. McNamara filed a motion to dismiss in June 1986. Thereafter, Senator Heinz filed a motion for summary judgment; Wells and Snyder followed with their motion.

The relevant facts are not in dispute. In May 1983, Wells and Snyder visited

Brownsville in connection with their interest in placing a relative in the nursing home. They were appalled by the conditions they observed in their short visit, which Brownsville stresses lasted only fifteen minutes. They then proceeded to communicate their concern to federal and state officials, in what Brownsville describes as a publicity and letter writing "campaign of Herculian [sic] dimension." Appellant's Brief at 13. Wells and Snyder wrote to the Ombudsman Program of Services to Senior Citizens, Pennsylvania Governor Richard Thornburgh, the State Secretary of Health, a State Senator, the HFCA, President Reagan, the United States Senate Special Committee on Aging, CBS News, 60 Minutes, and local television. On June 6, 1983, they wrote to appellee Senator Heinz, whom Brownsville claims soon joined Wells and Snyder in their conspiracy against the nursing home. The object of what Brownsville calls the "unholy alliance" between Heinz, Wells and Snyder was to pressure appellee McNamara to decertify the nursing home. Appellant's Brief at 18. In March 1985, a CBS television program aired a segment on Brownsville entitled "Somebody Ought to do Something."

It is Brownsville's contention, and the crux of its complaint that, as a result of the complaints of Wells and Snyder and of the attention paid to Brownsville by Senator Heinz and the Senate Committee on Aging which he chaired, the state and federal regulators were pressured into actions resulting in Brownsville's eventual loss of license and decertification. McNamara moved to dismiss on the ground, *inter alia,* that the complaint failed to state a claim. Wells and Snyder based their motion for summary judgment in part on the grounds that their conduct was legally privileged and justified and did not cause the initiation of regulatory proceedings against Brownsville. Senator Heinz' motion for summary judgment was based on constitutional immunity from suit under the Speech and Debate Clause, the propriety of his communications, the lack of causation of the regulatory actions, and legal privilege and justification.

Brownsville was permitted to take the depositions of Wells, Snyder and Senator Heinz and to review certain records of the Aging Committee relating to Brownsville. After the Commonwealth Court's decision became final, the district court granted summary judgment in favor of all four defendants. *Brownsville Golden Age Nursing Home, Inc. v. Wells,* 665 F.Supp. 419 (W.D.Pa.1987). The court dismissed the claim of malicious abuse of process against DOH official McNamara because, under Pennsylvania statutory law, a necessary element of such a claim is that the underlying proceedings have terminated favorably to the plaintiff. Here, the underlying proceedings were resolved unfavorably toward plaintiff Brownsville. *Id.* at 421. Brownsville concedes that this count of its complaint was properly dismissed. Appellant's Brief at 46 n. 3.

The court granted summary judgment against Brownsville on those counts of its complaint alleging tortious interference with business relationships by the defendants on the ground that it was the "multiple violations" of both state and federal law "discovered *independently* by ... inspectors," and not the allegations against Brownsville made by the defendants that caused Brownsville to lose its license. 665 F.Supp. at 421. Finally, the district court granted summary judgment against Brownsville on its civil conspiracy count for the same reason—that Brownsville's violations, confirmed by the Commonwealth Court, caused its loss of license, and not the activities of the appellees, even if the appellant's allegations about the conspiratorial nature of these activities were accepted as true. The court stated, "[w]e consider it a bit farfetched to believe that a guilty party, caught in violations it cannot deny, can sue the person who told the authorities where to look." *Id.* at 422.

## III.

### *Discussion*

In arguing that the district court erred, Brownsville places its primary reliance on what it terms the "smoking gun" letter, a

letter dated January 13, 1984 written by David Schulke, an investigator on the staff of the Senate Aging Committee, to Wells, with a copy to Snyder, outlining possible courses of action to be taken with respect to Brownsville. Even if those courses had been followed, and Senator Heinz notes that they were not, the letter does not raise a *material* issue of fact. At most, it would support an inference that the writer, who believed that "decertification proceedings [of Brownsville] are probably warranted at this time," App. at 485, anticipated a joint effort with Wells and Snyder.

The district court held that the Pennsylvania Commonwealth Court's decision, holding that the revocation of Brownsville's license was warranted because of its serious violations of nursing home standards, was dispositive of the issues raised by Brownsville in the federal case. We agree that when the Commonwealth Court's decision, first announced on October 15, 1986 (and modified slightly on reconsideration on February 4, 1987, 103 Pa.Cmwlth. 449, 520 A.2d 926), became final upon the Supreme Court of Pennsylvania's denial of Brownsville's petition to appeal, it undercut the factual basis for Brownsville's tort claims because it conclusively established against Brownsville the relevant facts underlying the administrative actions of which it complained. In the face of this state court final determination, Brownsville's contentions that Wells' and Snyder's allegations were "specious", Appellant's Brief at 45, and that action taken against it by the Pennsylvania DOH was unfair and a result of "improper pressure," *id.* at 46, are inapt. By definition, there can be no impropriety in pursuing administrative actions which cause the loss of license or certification of a facility which has been adjudged to have been in serious violation of its statutory and regulatory obligations.

Brownsville challenges the district court's conclusion that its loss of license was caused not by the defendants, but by the independent discovery by state and federal inspectors of Brownsville's multiple violations. Again Brownsville parries the thrust of the relevant issue. There can be no tortious action or impropriety when private citizens or public officials exercise their rights to notify the appropriate agencies or mobilize public opinion about a serious violation of the law.

In Pennsylvania, a civil conspiracy requires a showing that defendants combined either to do an unlawful act or a lawful act by unlawful means. *See Franklin Music v. American Broadcasting Companies,* 616 F.2d 528, 547 (3d Cir.1979) (Sloviter, J., concurring). Neither is alleged here. Similarly, the tort of interference with business relations only will lie where the defendant's interference with those relations is "improper". Restatement (Second) of Torts § 766 comment a. A determination of propriety requires inquiry into the "mental and moral character of the defendant's conduct," 2 Harper, James, and Gray, *The Law of Torts* § 6.12, at 349 (2d ed. 1986); *cf.* Restatement (Second) of Torts § 767 (listing various factors for identification of impropriety).

Action is not improper when the interference in contractual relations fosters a "social interest of greater public import than is the social interest invaded." 2 Harper, James, and Gray, *supra,* § 6.12, at 350–51; *see Restatement (Second) of Torts* § 766 comment c, at 10 ("The issue is whether in the given circumstances, [the defendant's] interest and the social interest in allowing the freedom claimed by him are sufficient to outweigh the harm that his conduct is designed to produce.") Patently, the revocation of Brownsville's license directed by the state court is dispositive of the propriety of defendants' actions for purposes of the state tort claims asserted.

Moreover, Brownsville cites absolutely no authority in Pennsylvania or elsewhere that holds that action designed to bring a facility's noncompliance with applicable regulations to the attention of the appropriate authorities and to stimulate public interest in the matter can be the basis for a damage action. In a somewhat analogous situation, it has been held that persons who were successful in persuading the Forest Service to reduce or abandon its timber sales program to protect the wilderness quality of an area could not be liable under

state tort law for interference with an advantageous relationship. *Sierra Club v. Butz,* 349 F.Supp. 934 (N.D.Cal.1972). Judge Zirpoli based the decision on the First Amendment right to seek to influence government action.[1]

Two lines of cases support the *Sierra Club* decision and that which we uphold here: the defamation cases, *e.g., New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), emphasizing the constitutional importance of communication on matters of public interest; and the *Noerr–Pennington* cases teaching that the collusive use by competitors of legislative, administrative or judicial process does not, without more, give rise to an anti-trust violation, *see, e.g., Eastern R.R. Conference v. Noerr Motor Freight,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

The rule that liability cannot be imposed for damage caused by inducing legislative, administrative, or judicial action is applicable here. The conduct on which this suit is based is protected by the firmly rooted principle, endemic to a democratic government, that enactment of and adherence to law is the responsibility of all. The problem is not too much citizen involvement but too little. Thus, we hold that as a matter of law, defendants' actions in calling Brownsville's violations to the attention of state and federal authorities and eliciting public interest cannot serve as the basis of tort liability.

In numerous cases, the courts have rejected claims seeking damages for injuries allegedly caused by the defendants' actions directed to influencing government action. *See, e.g., State of Missouri v. National Organization of Women,* 620 F.2d 1301, 1317 (8th Cir.), *cert. denied,* 449 U.S. 842, 101 S.Ct. 122, 66 L.Ed.2d 49 (1980) (boycott campaign of NOW against states not ratifying the ERA was neither tortious nor prohibited by Sherman Act because "the right to petition is of such importance that it is not an improper interference even where exercised by way of a boycott"); *Protect Our Mountain Environment, Inc. v. District Court,* 677 P.2d 1361, 1369 (Colo.1984) (*Noerr–Pennington* analysis applicable to suit for abuse of process and civil conspiracy); *Rudoff v. Huntington Symphony Orchestra, Inc.,* 91 Misc.2d 264, 397 N.Y.S.2d 863, 865 (N.Y.Sup.1977) ("public policy dictates that the tort of interference not be extended to those situations where a citizen petitions an agency of his government"); *Bledsoe v. Watson,* 106 Cal.Rptr. 197, 200, 30 Cal.App.3d 105 (Cal. Ct.App.1973) ("the benefit to the public interest in allowing free challenges to public expenditures that may circumvent the electoral process outweighs any detriment that may result to private contracting parties from such challenges"). Brownsville has neither distinguished these cases nor cited any authority to support its underlying action. It follows that the district court did not err in granting summary judgment for the defendants.[2]

Brownsville also argues that the district court erred in restricting discovery and entering summary judgment on the merits. Although discovery was originally stayed, the court thereafter permitted Brownsville discovery necessary to respond to Senator Heinz' motion for summary judgment. When a potentially dispositive issue is being readied for presentation to the court, nothing in the Federal Rules requires that

---

1. In *Sierra Club,* the court held that defendant's activity would be protected even over an allegation of malice. 349 F.Supp. at 939. We need not reach that issue here because Brownsville produced no evidence that defendants had any improper or malicious motive or that their actions were a sham. Nor does it further Brownsville's claim to charge repeatedly that Senator Heinz acted for political reasons since political action is the raison d'être of our elected government officials. Hence, it was hardly unsuitable, much less tortious, for Senator Heinz to have acted "for the obvious positive political reason accompanying the championing the rights of the helpless, infirm aged." Appellant's Brief at 24.

2. Brownsville complains about the "tone" of the district court's opinion and the court's "hostility" to the action. We review the district court's opinion for the soundness of the result reached, not for any possible caustic language it might have used.

a party be given *carte blanche* discovery. Significantly, Brownsville does not identify any document or avenue of discovery to which it was precluded that is relevant to the legal issues involved.

### IV.

For the reasons set forth above, we will affirm the order of the district court.