OPINION OF THE COURT
STAPLETON, Circuit Judge:
E. Marvin Herr, a land developer, appeals the grant of summary judgment to Pequea Township (“Township”) and its three supervisors, Virginia Brady, Bruce Groff, and Martin Hughes (collectively, “defendants”), in this civil rights action. Herr alleges that his right to substantive due process was violated by an eleven year campaign of the Township and its officers to delay and obstruct his development of an industrial park.
The defendants adopted a land use plan and a sewer facilities plan based in part on their view that industrial development within the Township should be restricted. Over the next eleven years, Herr, who wished to construct an industrial park and who had applied to the Lancaster County Planning Commission (“LCPC”) for approval of a subdivision plan prior to the effective date of these plans, sought the necessary authorization for his development from the LCPC, the Department of Environmental Review (“DER”), the Environmental Hearing Board (“EHB”), the Zoning Hearing Board (“ZHB”), and the courts. The Township participated in the proceedings before each of these bodies. While it acknowledged that Herr’s project was grandfathered under the prior land use plan if he completed it within five years, the Township insisted that he had no vested right to municipal sewer services under the prior sewer facilities plan and argued that the Township’s new plan should be enforced. After Herr secured an order from the DER directing the Township to amend its sewer facilities plan so as to provide municipal sewer service to his property and obtained a land use permit from the LCPC, the Township took the position in further proceedings that not all conditions of the LCPC’s approval had been fulfilled and that the five year grandfathering had expired before completion of the project. Ultimately, Herr secured the necessary authority to go forward with his industrial park.
Herr claims that the defendants’ conduct with respect to his proposed development was motivated throughout by a strong desire to preserve agricultural land and restrain development in the Township. In support of this claim, he has tendered evidence tending to show that the individual defendants had run for office on “anti-development” platforms and that their adoption of a new zoning ordinance and sewer facilities plan was intended to make it more difficult for developers to secure approvals of their projects. Herr stresses, for example, that the new zoning ordinance reduced the land zoned industrial by 68 percent.
While Herr points to the defendants’ adoption of the new zoning ordinance and sewer plan as evidence of their “anti-development bias,” we do not understand him to contend that the defendants’ actions with respect to those plans violated his right to substantive due process. Decisions on whether to adopt or amend zoning ordinances and municipal services plans are legislative ones that must survive due process review unless “the governmental body could have had no legitimate reason for its decisions.” Pace Resources, Inc. v. Shrewsbury Township, 808 F.2d 1023, *111 1084 (3d Cir.1987). The desire to limit development is such a legitimate reason. Id.
Rather, Herr claims that the defendants conspired to prevent him from securing the necessary approvals from other government agencies, or to delay the receipt of those approvals until his project would no longer be grandfathered under the pri- or ordinance. In support of this contention, he submitted what he regards as a “smoking gun” letter from Dr. Alan Peterson, the Chairman of the Pequea Township Environmental Advisory Council, to the Township’s legal counsel dated February 19,1994. That letter states in part:
Only Virginia Brady and I in the township know the following: (Do not state this back to the township in any manner). The owner must sell the lots, then all land development plans must be approved by ki or they become nonconforming lots in the Ag. District. Obviously the longer we can stall (if we can’t win this with the [Department of Environmental Review]), the better.
App. at 374-75.
According to Herr, the defendants’ conspiracy consisted of (1) resisting before the LCPC, the DER, the Board, and the courts Herr’s efforts to secure the right to proceed; (2) instructing its own personnel to carefully scrutinize Herr’s proposal in order to identify any possible problems; and (3) communicating with the LCPC, the DER, the State Fish Commission, the State Game Commission, and other governmental agencies voicing various concerns about the proposed project.
Herr relies on a line of our cases which hold that a township or other agency acting under color of state law denies a landowner substantive due process if it denies or delays action on his permit application for reasons unrelated to the merits of the application. See Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 124-25 (3d Cir.2000) (holding that delay of permitting process because of community resistance to proposed low income housing project provided jury with a basis from which it could reasonably find that decision maker acted in bad faith or due to an improper motive violating developer’s substantive due process rights); DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 601-02 (3d Cir.1995) (holding that denial of permit based on decision maker’s personal financial interest, if proven, establishes a violation of the right to be free from arbitrary and capricious government action); Blanche Rd. Corp. v. Bensalem Township, 57 F.3d 253, 267-68 (3d Cir.1995) (holding that conspiracy to delay permits for industrial park for political reasons unrelated to the merits of an application is sufficient to establish a substantive due process violation); Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 696-97 (3d Cir.1993) (holding that the jury could reasonably infer improper motive when lease was allegedly terminated based upon decision maker’s economic interest); Bello v. Walker, 840 F.2d 1124, 1129-30 (3d Cir.1988) (holding that a municipal corporation’s denial of a building permit for partisan political or personal reasons unrelated to the merits of the case, if proven, establishes a substantive due process violation). Herr correctly points out that, while the ultimate issue before the LCPC and the other governmental bodies was whether to permit a new industrial park, resolution of that issue properly turned on whether his development met the criteria established by law. The defendants’ opposition, according to Herr, was motivated by a determination to stop his development without regard to whether it met those criteria.
Unlike the defendants in the cases cited by Herr, however, the Township and its supervisors were not authorized to issue *112 permits for Herr’s industrial park. The LCPC alone had that authority. Herr’s claim is thus not that the defendants subverted a decision making process by taking irrelevant considerations into account. It is rather that the defendants contested issues before the bodies authorized to resolve various permitting issues because they wished to defeat or delay the approval of Herr’s project by those bodies. This claim is materially different from the claims asserted in Bello and its progeny.
We conclude that there is evidence from which a trier of fact could conclude that the Township’s challenged conduct was motivated by a desire to stop Herr’s development. At the same time, we conclude that there is no evidence from which a trier of fact could conclude that the Township took frivolous positions or otherwise unreasonably delayed the proceedings before the various state bodies. We hold that where a township participates in proceedings before other governmental agencies authorized to resolve issues like those here presented, the township and its supervisors are not subject to liability for delay occasioned by those proceedings solely because their participation was motivated by a desire to delay or prevent the project for which approval is sought.[1]
I.
Herr sought to develop approximately 45 acres of land that he owns in Pequea Township, Lancaster County, Pennsylvania. By October 9, 1989, he learned of a proposed land use plan under which the zoning of his land would be changed so as to permit only agricultural use. On December 5, 1989, Herr submitted to the LCPC a subdivision plan to construct an industrial park on this property (“Millwood Industrial Park” or “Millwood”). At the time he submitted this plan, his property was zoned industrial, and the existing sewage facilities plan (“the 1971 sewage facilities plan”) was a county-wide plan providing public sewers pursuant to the Pennsylvania Sewage Facilities Act (“Act 537”). The LCPC considered and rejected the industrial park plan twice, and Herr resubmitted it twice. Ultimately, the LCPC granted preliminary conditional approval on October 9,1990, and preliminary unconditional approval on February 25, 1991.
After Herr’s subdivision plan was filed but several months before the LCPC approvals, Pequea Township, on August 22, 1990, adopted a new Township map to conform with Lancaster County’s comprehensive plan. On the new map, the land where Herr’s proposed industrial park was to be situated was rezoned from industrial to agricultural. Under Pennsylvania law, Herr was allowed five years from the date of the preliminary approval to complete his non-conforming development.[2] Following adoption of the new zoning, the Township *113 began to revise its sewage facilities plan to comport with its new land planning scheme. On June 3, 1992, the Township repealed prior sewage plans and adopted a new sewage plan. The new plan provided for the extension of public sewers into areas of the Township designated for development but not into areas designated for agricultural use. Accordingly, the permitted sewage disposal for the area in which Millwood was situated was changed from public sewers to on-lot disposal systems. As required, the Township submitted its sewage facilities plan to the DER for approval under Act 537.
On July 30, 1992, Herr requested that the Township amend its sewage facilities plan so as to provide for municipal sewer service to Millwood. A little over a month later, on September 2, 1992, that request was denied.[3] Herr then filed a “private request” with the DER under 35 Pa. Cons. Stat. Ann. § 750.5 seeking an order requiring the Township to amend its sewage plan as it had been requested to do.[4] At the time of Herr’s private request, the Department was still reviewing the plan that the Township had submitted.
On September 28, 1993, the LCPC gave conditional final approval to a final plan for Millwood that had been submitted on August 3, 1992 (“the August 1992 plan”). The approval was conditioned on Herr’s satisfaction of over forty conditions including his securing approval for his proposed sewage disposal. On February 8, 1994, the DER granted Herr’s private request and issued an order directing the Township to revise its 1992 sewage plan.
Several years of litigation ensued. On March 25, 1994, the EHB reversed the decision of the DER. In response to this decision, the DER denied Herr’s private request on April 4, 1994. Then Herr appealed, first to the EHB and next to the Commonwealth Court. On May 31, 1996, the Commonwealth Court reversed the EHB’s decision, found in favor of Herr, and remanded the case for further proceedings. On remand, the EHB ultimately granted summary judgment on the sewage disposal issue. The Township and the DER both filed a petition for reconsideration with the Board, which denied the petition, and then a petition for review with the Commonwealth Court, which, on July 10, 1998, affirmed the Board’s decision. *114 Pequea Township v. Herr, 716 A.2d 678, 681 (Pa.Commonw.Ct.1998).
Throughout the “sewer litigation,” the Township maintained that the law specifying the sewer requirements applicable to the Millwood site was the 1992 sewer plan. In support of this view, it took the position that (1) the 1992 plan became effective without DER approval on October 20, 1992, pursuant to 25 Pa.Code § 71.32(c) (1989),[5] and the DER accordingly lacked authority for its original order; and (2) the statute grandfathering for five years developments pending approval at the time of a zoning change did not apply to sewer plans and, accordingly, Herr had no vested right to public sewer service. The Board agreed with the Township that the 1992 plan became effective on October 20, 1992. The Commonwealth Court did not reach the merits of that issue but did agree with the Township that the grandfathering provision for zoning ordinances did not give Herr a right to public sewer services under the 1971 plan. Pequea Township v. Herr, 716 A.2d 678, 684 (Pa.Commonw.Ct.1998). The Court nevertheless decided in Herr’s favor on the ground that, even if a landowner’s proposal is inconsistent with the applicable municipal sewer plan, the DER is authorized to require its adoption upon a showing that the provisions of the municipal plan are “inadequate” to meet the needs of the landowner. The Commonwealth Court wrote at some length on each of the six contentions raised by the DER and the Township.
On November 29, 1998, once all the sewage issues were settled, the LCPC determined that Herr met all of the remaining conditions for approval and permitted re-cordation of the final land development plan. The Township then appealed this decision to the Court of Common Pleas, arguing (1) that Herr failed to meet three of the other conditions imposed by the LCPC when it conditionally approved the August 1992 plan; and (2) that Herr’s vested rights to application of the preexisting zoning ordinance had expired because five years had elapsed since the approval of his preliminary development plan and no valid extension had been granted by the LCPC.
Meanwhile, after recordation, Herr began construction of his industrial park. During construction, Herr erected a sign advertising the sale of lots and began excavation. A Township zoning officer issued Herr an enforcement notice because he believed that Herr had violated the Township’s 1992 zoning ordinance for excavation without a zoning permit and advertising the sale of the premises without a zoning permit. Herr appealed the enforcement notice to the Zoning Hearing Board (“ZHB”), arguing that the Township’s 1980 zoning ordinance applied rather than the 1992 zoning ordinance. The ZHB held that, even if Herr’s substantive rights were determined by the earlier zoning ordinance, he must comply with the procedural requirements of the new ordinance, including its permit requirements. Herr appealed to the Court of Common Pleas.
The appeals to the Court of Common Pleas were consolidated. On December 29, 1999, the Court decided in favor of Herr and against the Township. With regard to the issues raised by the Township, the Court held that the LCPC did not abuse its discretion in granting Herr an *115 extension and allowing recordation of his plan. With regard to the issue raised by Herr, the Court found that the 1992 zoning ordinance requiring a permit for excavation and advertising was inapplicable because it was substantive rather than procedural in nature and thus adversely and improperly affected Herr’s substantive rights. The Township appealed the Court of Common Pleas decision to the Commonwealth Court, which affirmed on January 10, 2001.
II.
We agree with the District Court that Herr had a property interest in Millwood which was entitled to protection under “the substantive due process element of the Fourteenth Amendment.” Herr v. Pequea Township, No. 99-cv-199, at 17, 2000 WL 1100848 (E.D. Pa. filed July 31, 2000). See Blanche Road, 57 F.3d at 268 n. 15; DeBlasio, 53 F.3d at 601. We thus turn to the issue of whether Herr was deprived of that property interest in violation of substantive due process.
III.
With possible exceptions hereafter addressed in section IV, the injuries for which Herr seeks redress arise from the delay occasioned by the proceedings before the LCPC, the DER, the EHB, the ZHB and the courts of Pennsylvania. When recovery is sought against a participant in adjudicatory proceedings before state agencies and state courts based on its participation in those proceedings, fundamental interests are implicated that were not implicated in the situations before us in Bello and its progeny. Both the Constitution and the common law provide protection for those who petition the government.
“[T]he [First Amendment] right to petition extends to all departments of government” including administrative agencies and the courts. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). It is made applicable to the states by the Fourteenth Amendment. Hague v. Committee for Indus. Org., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). The protection it affords thus applies both to petitioning state agencies and to petitioning state courts. Moreover, this protection extends not only to petitioning for affirmative relief but also to petitioning in opposition to applications for relief by others. Armstrong Surgical Center, Inc. v. Armstrong County Mem. Hosp., 185 F.3d 154 (3d Cir.1999) (holding that the First Amendment right to petition provides protection for opposition to a competitor’s application to the State Department of Health for a Certificate of Necessity for a medical facility).
While the right to petition conferred by the First and Fourteenth Amendments does not provide an absolute immunity from liability for actions based on petitioning activity, see California Motor Transport, 404 U.S. at 513-14, 92 S.Ct. 609, the Supreme Court has held that such liability cannot be imposed in the absence of a finding that the position taken lacked any reasonable basis. In Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993), Columbia Pictures sued Professional Real Estate Investors (“PRE”) for copyright infringement. PRE filed a counterclaim under the Sherman Act and various state laws charging that the copyright infringement suit was a part of a conspiracy to monopolize and restrain trade. When Columbia Pictures moved for summary judgment based on its constitutionally protected right to petition, PRE argued that the copyright suit had been instituted in bad faith, i.e., it *116 was brought to restrain trade and without an “honest ... belifef] that the infringement claim was meritorious.” Id. at 54, 113 S.Ct. 1920. The Supreme Court acknowledged that petitioning immunity did not extend to liability based on the institution or maintenance of “sham” litigation but held that litigation could be regarded as a “sham” only if it is “objectively baseless.”
We now outline a two-part definition of “sham” litigation. First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized ..., and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant’s subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals “an attempt to interfere directly with the business relationships of a competitor,” through the “use [of] the governmental process — as opposed to the outcome of that process — as an anti competitive weapon,” Omni 499 U.S., at 380, 111 S.Ct. 1344 (emphasis in original).
Professional Real Estate Investors, 508 U.S. at 60-61, 113 S.Ct. 1920 (citations omitted).
The petitioning immunity that the Court upheld in PRE was immunity from antitrust liability. The Court pointed out, however, that the principles being relied upon were not limited to antitrust liability and noted that the same principles had been applied by it to liability under the National Labor Relations Act. See Bill Johnson’s Restaurants, Inc. v. NLRB, 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983) (holding that for a civil suit to be enjoined, there must be both an improper motive on the part of the plaintiff and a lack of a reasonable basis for the suit). Moreover, the Supreme Court in PRE stressed that its holding was consistent with the protection traditionally afforded petitioning activity under the common law:
[T]he Court of Appeals correctly held that sham litigation must constitute the pursuit of claims so baseless that no reasonable litigant could realistically expect to secure favorable relief.
The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation. The notion of probable cause, as understood and applied in the common-law tort of wrongful civil proceedings, requires the plaintiff to prove that the defendant lacked probable cause to institute an unsuccessful civil lawsuit and that the defendant pressed the action for an improper, malicious purpose. Probable cause to institute civil proceedings requires no more than a “reasonable] belie[f] that there is a chance that [a] claim may be held valid upon adjudication.” Because the absence of probable cause is an essential element of the tort, the existence of probable cause is an absolute defense. Just as evidence of anti-competitive intent cannot affect the objective prong of [the] sham exception, a showing of malice alone will neither entitle the wrongful civil proceedings plaintiff to prevail nor permit the factfinder to infer the absence of probable cause.
Professional Real Estate Investors, 508 U.S. at 62-63, 113 S.Ct. 1920 (footnote and citations omitted).
The law applied in PRE is generally referred to in the case law as the Noerr- *117 Pennington doctrine.[6] Since PRE, the courts of appeals have frequently held that the restrictions on liability there recognized are applicable to liability under state tort laws, e.g., State of Missouri v. National Organization of Women, 620 F.2d 1301, 1318-19 (8th Cir.1980), and to liability under the Civil Rights Act, e.g., Video Intern. Production, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075, 1084 (5th Cir.1988) (“... we hold that any behavior by a private party that is protected from anti-trust liability by the Noerr Pennington doctrine is also outside to scope of S 1983 liability”); Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 614-15 (8th Cir.1980) (same); Stern v. United States Gypsum, Inc., 547 F.2d 1329, 1342-46 (7th Cir.1977).
We reached a similar conclusion in Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 159-60 (3d Cir.1988). There, two private individuals and a public official were charged with having conspired to mount a campaign to get the Commonwealth of Pennsylvania to revoke the license of the plaintiff nursing home. This conspiracy was alleged to have violated state tort law. In support of its case, the plaintiff submitted a “smoking gun” letter written by a member of the official’s staff arguably reflecting an agreement to work together to secure termination of the license. We made the following observations that are instructive here:
In a somewhat analogous situation, it has been held that persons who were successful in persuading the Forest Service to reduce or abandon its timber sales program to protect the wilderness quality of an area could not be liable under state tort law for interference with an advantageous relationship. Sierra Club v. Butz, 349 F.Supp. 934 (N.D.Cal.1972). Judge Zirpoli based the decision on the First Amendment right to seek to influence government action.
Two lines of cases support the Sierra Club decision and that which we uphold here: the defamation cases, e.g., New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), emphasizing the constitutional importance of communication on matters of public interest; and the Noerr-Pennington cases teaching that the collusive use by competitors of legislative, administrative or judicial process does not, without more, give rise to an anti-trust violation, see, e.g., Eastern R.R. Conference v. Noerr Motor Freight, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).
The rule that liability cannot be imposed for damage caused by inducing legislative, administrative, or judicial action is applicable here. The conduct on which this suit is based is protected by the firmly rooted principle, endemic to a democratic government, that enactment of and adherence to law is the responsibility of all.
Brownsville, 839 F.2d at 159-60 (footnote omitted).
Also helpful is our decision in McArdle v. Tronetti, 961 F.2d 1083 (3d Cir.1992). There, a state employee, a prison counsel- or, allegedly prosecuted in bad faith a civil proceeding to have the plaintiff involuntarily committed to a mental health treatment facility. The plaintiff instituted his suit under the Civil Rights Act, 42 U.S.C. § 1983, claiming a violation of his right to substantive due process. We held that *118 this claim was analogous to “a common law tort of malicious use of civil process by a state actor” and that “claims of malicious prosecution brought under Section 1983 ‘must include the elements of the common law tort as it has developed.’ ” Id. at 1088 (quoting Rose v. Bartle, 871 F.2d 331, 349 (3d Cir.1989)). We cited to section 674 of the Restatement (Second) of Torts as evidencing those elements. That section provides:
One who takes an active part in the initiation, continuation or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if
(a) he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and
(b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.
“In determining probable cause for initiation of civil proceedings, all that is necessary is that the claimant reasonably believe that there is a sound chance that his claim may be held legally valid upon adjudication.” Restatement (Second) of Torts, § 675, cmt. (e) (1976).[7]
Herr’s § 1983 claim against the defendants in this case is analogous to the common law tort of malicious use of civil process by a state actor. Accordingly, liability cannot be imposed under the teaching of McArdle unless all elements of the common law tort are satisfied. This includes the requirement that the defendants resisted Herr’s efforts to secure approval “without probable cause and primarily for a purpose other than securing the proper adjudication” of Herr’s claim. Nor, of course, can liability be imposed in a manner inconsistent with the Constitution.
As Justice Souter points out in his concurring opinion in PRE, there may be a conceptual difference between the Constitutional “probable cause” requirement as articulated in PRE and the term “probable cause” as employed by the Restatement and the common law. PRE, 508 U.S. at 66-67, 113 S.Ct. 1920 (Souter, J., concurring). PRE’s “probable cause” is wholly objective — liability may be imposed only if “no reasonable litigant could realistically expect to secure favorable relief.” PRE, 508 U.S. at 62, 113 S.Ct. 1920. The common law’s “probable cause” may have a subjective component — the defendant must “reasonably believe that there is a sound chance that his claim may be held legally valid.” Restatement (Second) of Torts § 675, cmt. (e). In most situations, this will be a distinction without a difference. If a person has undertaken to participate in civil proceedings and the circumstances are such that he could have a reasonable expectation that he may succeed, it will be the rare case indeed in which he does not actually have that expectation. In any event, we need not determine in this case whether there are cases in which the distinction would znake a difference. It does not here.
The record in this case will not support a conclusion that the defendants’ resis *119 tance to Herr’s application was frivolous in the sense that no reasonable litigant could realistically expect to prevail. Nor will it support an inference that the defendants had no belief that they had a “sound chance” of prevailing. As the District Court pointed out, they took no appeal from the LCPC’s original conditional approval in 1992 and thus did not contest that Herr was entitled for five years to the benefits of the prior zoning ordinance. Moreover, their basic position in the sewer litigation that Herr had no vested rights to municipal sewer services under the 1971 sewage facilities plan was ultimately sustained by the Commonwealth Court. Thus, what Herr characterizes as a bad faith “end run” around the grandfathering provision of the zoning law was, in reality, a winning argument. Even Herr’s “smoking gun” letter, to the extent it can be taken as reflecting the defendants’ views, evidences that the Township expected that it might well prevail before the DER and that the possibility of the five year period expiring was regarded as only an additional, incidental benefit of the defendants’ resistance before the state agency and the courts.
While Herr characterizes the defendants’ resistance in conclusory terms as frivolous, he has not identified any specific issue and articulated why it was not a litigable one. Our search of the record has not identified such an issue, and we find no suggestion in the opinions of the decision-making agencies that any of them regarded the Township’s positions as frivolous. Both the 1998 opinion of the Commonwealth Court in the sewer litigation and the 1999 opinion of the Court of Common Pleas in the ensuing litigation analyze the issues presented with care and some detail. If either court had viewed one or more of those issues as frivolous, we are confident that some evidence of that view would have found its way into the opinions.[8]
IV.
To the extent the rule of decision here is grounded in the common law, it makes no difference whether we are analyzing the liability of the Township or the liability of the supervisors in their individual capacities. The elements of Herr’s claim would be the same in either event, and if Herr has not come forward with evidence that satisfies each essential element of the analogous state tort, summary judgment is appropriate. To the extent the rule of decision here is an immunity rooted in the First Amendment, the analysis of the Township’s liability involves an additional issue. It is clear that public officials sued in their individual capacity are entitled to the immunity provided under the Noerr-Pennington doctrine. See Brownsville Golden Age Nursing Home, 839 F.2d at 159-60. We have found no case addressing the issue of whether a municipal corporation is entitled to such immunity.[9] We predict, however, that the Supreme Court would hold that it is.
*120 In situations of this kind, a township and its supervisors represent their constituents and facilitate their participation in the governmental process. Indeed, if municipal governments are discouraged from utilizing municipal funds to finance participation in proceedings before other governmental agencies, their citizens are likely to be left without a voice in important matters pending before those agencies. Moreover, municipal governments are among those most likely to be in possession of information relevant to the kinds of decisions that had to be made here and are among those most likely to be aware of the decision makers’ need for information. A rule which would discourage municipalities from expressing concerns and taking a position before other governmental agencies would “deprive the government of a valuable source of information.” Noerr, 365 U.S. at 139, 81 S.Ct. 523. Granting petitioning immunity to townships would thus serve the purposes of the right to petition clause. While the Supreme Court has held that townships are not entitled to the across-the-board, common law, qualified immunity enjoyed by public officials who exercise discretionary functions, Owen v. City of Independence, 445 U.S. 622, 649-50, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the rationale of that decision is inapposite here. Petitioning immunity is a limited immunity based on a specific provision of the Constitution itself and extending it to townships would not only be consistent with, but would further, the purposes of the right to petition clause.
We therefore hold that neither the Township nor its supervisors may be held liable based on the delays occasioned by the proceedings before the LCPC and other public bodies in the absence of a showing, not made upon this record, that they lacked “probable cause” for the positions they took.
V.
In addition to the claims predicated on the delays occasioned by the proceedings before the LCPC and other public bodies, Herr’s brief makes the following allegations:
As in Blanche Road, there is substantial evidence that defendants tried to delay or stop Mr. Herr’s development through “extra scrutiny” of Mr. Herr’s plans — both improper reviews and never-ending searches for “problems” with or additional conditions for the plans. Additional “problems” or conditions, the Township supposed, might cause the LCPC to disapprove the project or Mr. Herr to abandon it. For example, there is evidence that defendants caused the Township zoning officer to give special attention to reviews of plans for Mill-wood Industrial Park. Similarly, there is evidence that the Township conducted numerous, time-consuming reviews to find “every possible violation” in Mr. Herr’s plans (Blanche Road, 57 F.3d at 260) and, thereafter, reported all such reviews to the LCPC in the hope that the LCPC would disapprove the plans.
*121 Finally, there is evidence of the Township’s and the Supervisors’ efforts to foster unfounded opposition to Millwood Industrial Park from public agencies and private parties alike. The Township repeatedly sent out letters attempting to “engender any concerns” or otherwise “get Mr. Herr on something else” (Blanche Road, 57 F.3d at 258) as a means to “slow down and shut down” (Id. at 260) the project.
Appellant’s Br. at 31-32.
While these charges are east in a somewhat different form and are obviously intended to bring these aspects of Herr’s case within the teachings of Blanche Road, we conclude that they, too, are barred by the protection afforded for petitioning activity. To the extent these claims are based on communications to the LCPC and other responsible state agencies, a straightforward application of the principles already discussed leads to the conclusion that there can be no § 1983 liability. Calling concerns about a proposed development to the attention of the responsible state agencies lies at the core of privileged activity, and this is true without regard to the number of concerns expressed so long as there is some rational basis for those concerns. In making these charges, Herr has identified no problem communicated to a state agency that has been shown to have no rational basis.
In Blanche Road, we held that the defendants might have exposed themselves to § 1983 liability “by ordering that Blanche Road’s applications be reviewed with greater scrutiny in order to slow down the development.” 57 F.3d at 269. We so held, however, in the context of a situation in which the defendants comprised the permitting authority and their alleged conduct “improperly interfered with the process by which the township issued permits ... for reasons unrelated to the merits of the application for permits.” Blanche Road, 57 F.3d at 267-68.
Here, the charge is that the defendants instructed Township employees to apply “extra scrutiny” in their review of Herr’s proposal in order to identify problems relevant to Herr’s application before the LCPC and other state agencies. We conclude that this essential precursor to the Township’s actual communications with the state agencies also comes within the law’s protection for petitioning activity and that this is true regardless of how thorough the employees were instructed to be in identifying problems with the jurisdiction of the petitioned agencies.
VI.
The judgment of the District Court will be affirmed.

. The dissent correctly notes that the Township and its supervisors have asked us to affirm the judgment of the District Court on the ground that the evidence presents no material dispute of fact as to whether they had an improper motive. If Bello and its progeny were the controlling authority here and motive were the legally relevant issue, we would find ourselves hard pressed to uphold the District Court’s judgment. However, "when the judgment of a district court is [legally] correct, it may be affirmed for reasons not given by the Court and not advanced to it.” Video International Production, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075, 1085 (5th Cir.1988) (quoting Laird v. Shell Oil Co., 770 F.2d 508, 511 (5th Cir.1985)); Elliot Coal Mining Co. v. Director, 17 F.3d 616, 628 n. 16 (3d Cir.1994).

. Under Pennsylvania law, once a development proposal is submitted, the zoning regulations in place are not subject to change (with respect to that proposal) for five years after the preliminary proposal is approved. See 53 Pa.C.S.A. § 10508(4)(i).

. Section 71.53 of the DER regulations, as then in effect, provided:
(f) A municipality may refuse to adopt a proposed revision to their official plan for new land development for reasons, including, but not limited to:
(1) The plan is not technically or administratively able to be implemented.
(2) Present and future sewage disposal needs of the area, remaining acreage or delineated lots are not adequately addressed.
(3) The plan is not consistent with municipal land use plans and ordinances, subdivision ordinances or other ordinances or plans for controlling land use or development.
(4) The plan is not consistent with the comprehensive sewage program of the municipality as contained in the official plan.
(5) The plan does not meet the consistency requirements of § 71.21 (a)(5)(i)-(iii).
25 Pa.Code§ 71.53(f) (1989).

. Section 750.5(b), as then in effect, provided:
Any person who is a resident or property owner in a municipality may request the department to order the municipality to revise its official plan where said person can show that the official plan is inadequate to meet the resident’s or property owner's sewage disposal needs. Such request may only be made after a prior demand upon and refusal by the municipality to so revise its official plan. The request to the department shall contain a description of the area of the municipality in question and an enumeration of all reasons advanced by said person to show the official plan's inadequacy. Such person shall give notice to the municipality of the request to the department.

. This section provides:
Upon the Department's failure to act on a complete official plan or revision within 120 days of its submission, the official plan or official plan revision will be considered approved, unless the Department informs the municipality prior to the end of 120 days that additional time is necessary to complete its review. The additional time may not exceed 60 days.

. From the seminal cases of Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

. Contrary to the suggestion of the dissent, we do not read Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), a case dealing with an alleged malicious prosecution that implicated the Fourth Amendment, as overruling McArdle, a case dealing with an alleged malicious use of civil process that did not implicate the Fourth Amendment. Also, contrary to the suggestion of the dissent, we believe McArdle stands for the proposition that the principles we endorsed in Brownsville are applicable to an alleged constitutional tort based on substantive due process.

. We fail to perceive any similarity between this case and Grant v. City of Pittsburgh, 98 F.3d 116 (3d Cir.1996). There we were asked to decide "whether, in applying Harlow’s objective test for qualified immunity, a Court may 'consider' evidence of a defendant’s state of mind when motivation is an essential element of the civil rights claim." Id. at 123. Our answer was in the affirmative. That answer is not helpful here, however. Because the positions taken by the Township have not been shown to be “objectively baseless” or asserted without "probable cause," the motive behind taking those positions is not legally relevant to the propriety of the summary judgment entered against Herr.

. The dissent cites one case, Video International Production, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075 (5th *120 Cir.1988), as standing for the proposition that petitioning immunity cannot apply to a public entity. In that case, however, the plaintiff did not seek to impose liability on the defendant city based on petitioning activity. The complaint was based on the city’s own zoning enforcement decisions and, as the Court noted, "it is impossible for the government to petition itself.” Id. at 1086. Video International did not involve a situation, like the one before us, in which the plaintiff seeks to impose liability on a municipality for petitioning a distinct public entity authorized by state law to resolve land planning issues. Video International would be of help here only if Herr were suing a public entity which had denied it a permit for reasons unrelated to the merits of the permit application.